11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Robert Louis Holiness

Appellant

Vs.                   No.
11-01-00027-CR B Appeal from Dallas County

State of Texas

Appellee

 

The jury
convicted appellant of capital murder. 
The State did not seek the death penalty, and the trial court assessed
appellant=s punishment at confinement for life.  TEX. CODE CRIM. PRO. ANN. art. 37.071
(Vernon Supp. 2002).

This was a
gang-related murder.  Appellant was a
member of the ABloods,@ and the victim was a member of the AKrypts.@  One
of the Bloods, AD-Man,@ was mad at a Krypt, ABlue Dog@; and, while several of the Bloods were at a
drug house, it was decided that they would find ABlue Dog@ and beat him up.  Appellant, along with other members of the Bloods, got into a
truck and drove to a spot where they thought they might find ABlue Dog.@  They saw the victim at a pay
phone.  The victim was not ABlue Dog.@  Nevertheless, appellant and
the Bloods pulled up to the pay phone; someone in the group fired some shots in
the air; and they forced the victim into the truck and drove back to the drug
house.  The victim was pulled from the
truck and beaten by the Blood gang members. 
When the victim broke free and tried to run away, AFlea,@ the driver of the truck, told the others to get the victim because the
victim knew who Flea was.  Flea chased
the victim in the truck, and appellant and ALittle Deon@
chased him on foot.  Appellant was armed
with a nine-millimeter handgun, and Little Deon had a sawed-off shotgun.  The victim ran across a backyard and climbed
a fence.  Appellant tried to shoot his
gun, but it misfired.  Little Deon shot
the victim in the back with the shotgun and left the victim in the yard to
die.  Appellant testified that he did
not participate in the beating of the victim and that he attempted to fire his
gun in the air to try and help the victim.








Appellant
contends in his first point of error that the trial court erred in admitting
his written statement.  Appellant argues
that the State failed to prove that he voluntarily made the statement.  In the statement, appellant admitted that he
was one of the group that was looking for Blue Dog.  He admitted that they saw the victim at the pay phone and that
they forced the victim to get into the truck. 
He admitted that some of the gang members struck the victim.  Also, he admitted that shots were
fired.  Appellant states that, while he
and Little Deon were chasing the victim, he pointed the pistol in the air and
pulled the trigger once.  He heard a
click, but the gun did not fire.  As
appellant was trying to clear the gun by pulling the slide back, two rounds
fell to the ground.  Appellant stated
that he heard Little Deon say: ABitch you ain=t
gonna run now.@ 
Appellant said that he heard a shotgun blast and saw that Little Deon
had shot the victim.

Detective
Linda Erwin testified at the suppression hearing that she talked to appellant
about the kidnapping and murder while appellant was incarcerated at the
Bradshaw State Jail when he was completing a sentence for an unrelated burglary
conviction.  Appellant was scheduled for
release from the state jail within a few days. 
At the beginning of the interview, Detective Erwin testified that she
told appellant what she wanted to talk to him about and that she read appellant
his Miranda[1]
warnings.  Detective Erwin testified
that appellant gave his statement freely and voluntarily after being given the
proper warnings and that she neither threatened nor induced him in any way.

Appellant
testified that he was not given his Miranda warnings and that Detective
Erwin coerced him into giving his statement by promising him that she would let
him go home following the end of his sentence for burglary and that she would
help him if he named the shooter. 
Detective Erwin denied appellant=s allegations.  Appellant
contends that the facts substantiated his version.  Appellant points out that his statement provided the State with
probable cause to charge appellant with kidnapping or murder.  Nevertheless, shortly after appellant gave
the statement, the prison authorities released appellant as planned.  Detective Erwin acknowledged that she could
have filed charges on appellant and sought an administrative hold to prevent
appellant from being released. 
Detective Erwin explained that she did not place a hold on appellant
because she and her supervisor wanted to complete the investigation before any
charges were filed.  She stated that an
innocent person had previously been jailed for several months for this murder
and that she wanted to be sure that all of her information was complete before
any charges were filed on anyone else.








Detective
Erwin testified as follows:

A: I
wanted to be sure in my mind, and that my investigation was as complete as it
could be, and that I had all of the information that I could have at the time
that the charges were filed.

 

Q:
Okay.  Did you ever promise him, once
again, that, you know, if he gave you statements you would let him get out of
jail so, he could turn himself in?

 

A: No.

 

Q: You
told us about the conversation when he asked you what was going to happen
next.  And, when was this conversation that
you just told the Judge about?

 

A: It was
during the time that we were talking, after the statement had been taken, after
it had been signed, he said, what is going to happen now?  And I told him, that there was still
investigation to be done.  That I was
not finished with my investigation and that I was not ready at that time to
file any charges on anyone.  And, he
told me that he was due to get out of jail the next day or a couple of days
later or something like that, it was very, very soon.  And, what I said to him, was, I am relatively sure that, my
investigation is not going to be complete before that time is up within the
next day or two.  And, he said well, if
you will just call me, if you file charges on me he said, I know that I am
going to have to answer to these charges and if you will just let me know, I
will give myself up.

 

Q: Was
that ever an inducement to him to give you the voluntary statement?

 

A: No,
sir, it wasn=t.

 

Q: He had
already given you the voluntary statement and signed it each of the six pages;
is that correct?

 

A: Yes, it
is.

 

The trial
court was the sole judge of the weight and credibility of the evidence, and the
trial court=s findings may not be disturbed absent a
clear abuse of discretion.  Wood v.
State, 18 S.W.3d 642, 646 (Tex.Cr.App.2000). 
We view the evidence in the light most favorable to the trial court=s ruling. 
See Guzman v. State, 955 S.W.2d 85, 89 (Tex.Cr.App.1997).  We hold that the evidence presented at the
suppression hearing supports the trial court=s finding that appellant knowingly, intelligently, and voluntarily
waived his rights without coercion or inducement.  Appellant=s first point is overruled.








In his
second point, appellant asserts that the evidence is factually insufficient to
support his conviction.  The evidence is
Afactually insufficient@ to support a conviction (entitling appellant
to a remand for a new trial) if the reviewing court, after considering all of
the evidence in a Aneutral
light,@ concludes either that Athe evidence is factually insufficient to
support a finding of a vital fact@ or that Athe
finding of a vital fact is so contrary to the great weight and preponderance of
the evidence as to be clearly wrong.@  Goodman v. State, ___ S.W.3d
____ (No. 120-00, Tex.Cr.App., November 21, 2001)(not yet reported); see also
Johnson v. State, 23 S.W.3d 1 (Tex.Cr.App.2000); Cain v. State, 958 S.W.2d 404,
407-08 (Tex.Cr.App.1997); Clewis v. State, 922 S.W.2d 126 (Tex.Cr.App.1996).

TEX. PENAL
CODE ANN. ' 19.03(a)(2) (Vernon 1994) provides that a
person commits capital murder if such person intentionally commits murder in
the course of committing or attempting to commit the offense of
kidnapping.  Under the law of parties, the
jury could have convicted appellant if it found that he was present at the
commission of the offense and acted with intent to promote or assist in the
commission of the offense by soliciting, encouraging, directing, aiding, or
attempting to aid in the commission of the offense.  TEX. PENAL CODE ANN. ' 7.02(a)(2) (Vernon 1994); King v. State, 29 S.W.3d 556, 564
(Tex.Cr.App.2000).  In reviewing the
sufficiency of the evidence to support appellant=s participation as a party, we may consider events occurring before,
during, and after the commission of the offense and may rely on actions of
appellant which show an understanding and common design to do the prohibited
act.  King v. State, supra at 564.








Appellant
argues that the evidence showed that he was merely present at the murder
scene.  We disagree.  The evidence showed that appellant
voluntarily participated in the abduction of the victim and chased the victim
when he attempted to escape.  Bullets from
appellant=s gun were found at the scene in a pattern
that contradicted appellant=s explanation that he only tried to fire a warning shot.  At one point, appellant testified that he
knew the gun would not work and that he was only carrying it for show.  After the victim was shot, appellant left
the scene without attempting to help the victim or call for assistance.  Detective Erwin testified that, during her
investigation, she heard from numerous sources that appellant had bragged about
having committed or being involved in the offense.  A member of the Bloods testified that, after the murder,
appellant was bragging about what had happened.  The evidence was factually sufficient to support the
verdict.  Appellant=s second point is overruled.

Appellant
maintains in his third point of error that the trial court erred in not
including a definitional instruction of reasonable doubt in the charge.  The court in Paulson v. State, 28 S.W.3d
570, 572 (Tex.Cr.App.2000), overruled its prior holding in Geesa v. State, 820
S.W.2d 154 (Tex.Cr.App.1991), requiring trial courts to instruct juries on the
definition of Abeyond a reasonable doubt.@  The
court in Paulson stated: AWe find that the better practice is to give no definition of reasonable
doubt at all to the jury.@  Appellant=s third point is overruled.

The
judgment of the trial court is affirmed.

 

AUSTIN
McCLOUD

SENIOR
JUSTICE

 

January 17, 2002

Do not publish.  See TEX.R.APP.P. 47.3(b).

Panel consists of: Wright, J., and

McCall, J., and McCloud, S.J.[2]











[1]Miranda v. Arizona, 384 U.S. 436 (1966).





[2]Austin McCloud, Retired Chief Justice, Court of
Appeals, 11th District of Texas at Eastland sitting by assignment.