Jeffrey Lee WOOD, Appellant,

v.

The STATE of Texas.

No. 73,102.

Court of Criminal Appeals of Texas.

May 24, 2000.

Harold J. Danford, Kerrville, for appellant.

E. Bruce Curry, Dist. Atty., Lucy Cavazos, Asst. Dist. Atty., Kerrville, for the State.

## *O P I N I O N*

MEYERS, J., delivered the unanimous opinion of the Court.

Appellant was convicted of capital murder on March 2, 1998, for committing murder in the course of robbery. TEX. PENAL CODE ANN. § 19.03(a)(2). Pursuant to the jury's answers to the special issues set forth in Texas Code of Criminal Procedure article 37.071 §§ 2(b) and 2(e), the trial judge sentenced appellant to death. Art. 37.071 § 2(g).[1] Direct appeal to this Court is automatic. Art. 37.071 § 2(h). Appellant raises ten points of error. We affirm.

---

**1.** Unless otherwise indicated, all future references to Articles refer to the Code of Criminal Procedure.

In his first two points of error, appellant challenges the admission of his confession. In his first point of error, appellant argues that the trial court should have suppressed his oral statements because police refused his request for counsel. In his second point of error, appellant contends his confessions were involuntary because he was intoxicated and tired and therefore did not know the consequences of waiving his rights.

■ At the suppression hearing, the State introduced transcriptions of appellant's two audio-taped confessions given on January 2nd and 3rd, 1996. Appellant can be heard stating on each tape that he understood and voluntarily waived his right to counsel. Although appellant testified at the hearing that he requested counsel from several officers before he gave these statements, all five officers involved with appellant's arrest and interrogation testified to the contrary. When asked on cross-examination why he did not state on the tapes that he had previously requested counsel, appellant replied that he had been awake for two to four days and had been drinking. The two interrogating officers testified, however, that appellant appeared "wide awake"—not tired or intoxicated.

■ At a hearing on appellant's motion to suppress evidence, the trial court is the sole judge of the weight and credibility of the evidence, and the trial court's finding may not be disturbed on appeal absent a clear abuse of discretion. *Alvarado v. State*, 853 S.W.2d 17, 23 (Tex.Crim.App. 1993); *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990). In reviewing the trial court's decision, we view the evidence in the light most favorable to the trial court's ruling. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997).

After hearing the testimony and reviewing appellant's statements, the trial court found that, on each occasion, the interrogating officers apprised appellant of his right to counsel and that appellant voluntarily waived this right. The trial court also found that appellant was neither sleep-deprived nor under the influence of drugs or alcohol at the time of either statement. The trial court's findings are supported by the testimony of the officers. The trial court did not abuse its discretion in denying appellant's motion to suppress. *See Dewberry v. State*, 4 S.W.3d 735, 748 (Tex.Crim.App.1999), *cert. denied,* —— U.S. ——, 120 S.Ct. 2008, —— L.Ed.2d —— (2000). Appellant's first and second points of error are overruled.

■ In his third point of error, appellant claims the trial court erroneously admitted hearsay testimony as to the contents of an unauthenticated videotape.[2]

The evidence showed that appellant and Daniel Reneau, appellant's co-defendant, robbed a Texaco station and stole the safe, the surveillance VCR, and other items. During the course of the robbery, Reneau shot the victim. Appellant and Reneau fled to appellant's parents' home in Devine, Texas, where they attempted to open the safe with a sledge hammer and blow torch. Appellant's sixteen-year-old brother, Jonathan Wood, asked how they had obtained the safe, and appellant explained that they had robbed the service station and killed the attendant. When Jonathan expressed his disbelief that they had committed murder, appellant played the surveillance vid-

---

**2.** Referring to Texas Rule of Criminal Evidence 403, appellant also complains that the probative value of the video was outweighed by its prejudicial effect. Because appellant only objected on the ground that the tape had not been properly authenticated under Rule 901, appellant has waived his Rule 403 challenge. In addition, while appellant argues generally in his brief that the evidence is "hearsay" to which no exception applies, his only trial objection was based on lack of authentication. Accordingly, our analysis is limited to appellant's authentication argument.

The Texas Rules of Criminal Evidence were amended and merged with the Texas Rules of Civil Evidence to become the Texas Rules of Evidence, effective March 1, 1998. Judgment was entered in appellant's case on March 2, 1998, but all of appellant's points of error raising issues relating to the Rules of Evidence pertain to proceedings occurring before March 1, 1998.

eo showing Reneau shoot the victim. Then, pursuant to appellant's instructions, Jonathan destroyed the video with a blow torch.

Over appellant's objection that the State had not laid the proper predicate, Jonathan testified at trial concerning the contents of the tape:

> Daniel walked into the store with a small pistol—well, fairly large, but he walked in and he pointed the gun at the dude and said something. It was blurry. I couldn't understand it, and the next thing I know was a shot and that the dude fell out of sight and he went around the back and then [appellant] was out by the truck when the shot went off, but then he walked by the door . . . and looked through the glass and then he went in and he looked over the counter and after that he went back, too, and he just cut it off.

Appellant argues that the State failed to properly authenticate the tape because Jonathan had no personal knowledge of where or when the tape was made. He further avers that "it was impossible for the state to demonstrate that the video resulted from a reliable process or system in accordance with Texas Rules of Evidence 901(b)(9)."

Texas Rule of Criminal Evidence 901 provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." *See Angleton v. State,* 971 S.W.2d 65, 67–68 (Tex.Crim.App.1998). Rule 901(b) provides illustrations of authentication complying with the rule. For instance, testimony by a witness with knowledge that the matter is what it is claimed to be is an acceptable method of authentication. TEX.R.CRIM. EVID. 901(b)(1). Also, the matter in question may be authenticated by its "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances." TEX. R.CRIM. EVID. 901(b)(4). Although generally the original recording is required to prove the content of a video tape, *see* TEX.R.CRIM. EVID.1002, "other evidence of the contents of a . . . recording . . . is admissible if [a]ll originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith." TEX. R.CRIM. EVID. 1004(1).

Jonathan testified that he destroyed the tape with a blow torch; accordingly, the State was authorized to prove its contents through "other evidence." *See* TEX.R.CRIM. EVID. 1004. Jonathan, who was familiar both with appellant and Reneau, identified them on the tape and possessed sufficient knowledge to testify to the tape's contents. *See* TEX. R.CRIM. EVID. 901(b)(1) and (4). Moreover, the circumstances surrounding Jonathan's viewing of the tape—*i.e,* that appellant played the tape for him to prove that they had committed murder during the course of stealing the safe—serve to authenticate its contents. *See* TEX.R.CRIM. EVID. 901(b)(4). The State's method of authentication satisfied the requirements of Rules 901 and 1004 in this case. The trial court did not abuse its discretion in admitting Jonathan's testimony describing what he had viewed on the tape. *See Angleton,* 971 S.W.2d at 67. Point of error three is overruled.

In his fourth point of error, appellant alleges the trial court erroneously denied his motion for mistrial asserted during the second competency hearing. Specifically, he complains that he had subpoenaed the State's expert, Dr. John Quinn, to produce "all information of any nature whatsoever relating to appellant," but that Quinn failed to bring his "raw testing data" to the competency hearing. Appellant claims the raw data was "crucial" to appellant's ability to cross-examine Quinn and to a determination of an explanation for the differing conclusions of the State's and the defense's experts.[3]

---

**3.** Appellant relies on Rule of Criminal Evidence 705, which provides that, "unless the court requires otherwise" an expert may testify as to his opinion without prior disclosure of

At the competency hearing, Quinn explained that he had never seen the subpoena because it went directly to the records department at Vernon State Hospital. Quinn testified that he tendered to appellant his entire file, with the exclusion of raw data per hospital policy. Quinn further explained that he could not have released the raw data unless the subpoena had included an explicit request for "raw data." Appellant requested a mistrial and asked that the case be reset to allow him an opportunity to obtain the raw data.

Mistrial is a remedy appropriate for a narrow class of highly prejudicial and incurable errors:

A mistrial is a device used to halt trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile. Thus, a trial court may properly exercise its discretion to declare a mistrial if an impartial verdict cannot be reached, or if a verdict of conviction could be reached but would have to be reversed on appeal due to an obvious procedural error. *Sewell v. State*, 696 S.W.2d 559, 560 (Tex. Crim.App.1983). The determination of whether a given error necessitates a mistrial must be made by examining the particular facts of the case. *Hernandez v. State*, 805 S.W.2d 409, 413–414 (Tex. Crim.App.1990), *cert. denied*, 500 U.S. 960, 111 S.Ct. 2275, 114 L.Ed.2d 726 (1991). The asking of an improper question will seldom call for a mistrial, because, in most cases, any harm can be cured by an instruction to disregard. *Ibid.* A mistrial is required only when the improper question is clearly prejudicial to the defendant and is 'of such character as to suggest the impossibility of withdrawing the impression produced on the minds of the jurors. *Ibid.* A trial court's denial of a mistrial is reviewed under an abuse of discretion standard. *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim.App.1999), *cert. denied*, — U.S. ——, 120 S.Ct. 1680, 146 L.Ed.2d 487 (2000). Assuming"raw data" was covered by appellant's subpoena and should have been produced, mistrial would have been an inappropriate remedy in these circumstances. Appellant made no showing that the material was unobtainable. Neither did he request a continuance to allow Quinn an opportunity to obtain the material, a much less drastic remedy. The trial court did not abuse its discretion in denying appellant's motion for a mistrial. *See Sosa v. State*, 769 S.W.2d 909, 912–13 (Tex. Crim.App.1989)(where appellant did not receive copy of State's expert's report on competency, but appellant did not request continuance to further prepare for cross-examination of, mistrial motion was properly denied and appellant not harmed or prejudiced). Point of error four is overruled.

In his fifth point of error appellant argues that the punishment-phase special issue required by Article 37.071 § 2(b)(2)[4] is unconstitutional because it permits the jury to impose the death penalty without regard to whether appellant acted deliberately. Without further argument, appellant cites the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, Article I §§ 10, 13, and 19 of the Texas Constitution, and *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972)[5] as support for this contention.

the underlying facts or data. "The expert may in any event disclose on direct examination, or be required to disclose on cross-examination, the underlying facts or data...."

4. The jury was required to answer the following special issue pursuant to Article 37.071 § 2(b)(2):

Do you find from the evidence beyond a reasonable doubt that JEFFREY LEE WOOD, the defendant himself, actually caused the death of Kriss Keeran, the deceased, on the occasion in question, or if he did not actually cause the deceased's death, that he intended to kill the deceased or another, or that he anticipated that a human life would be taken?

5. Because appellant neither explains how *Furman* supports his point nor distinguishes his rights under the Texas Constitution from that of the federal Constitution, we address only whether the anti-parties special issue violated appellant's rights under the United

We have decided this issue adversely to appellant. In *McFarland v. State*, we held the anti-parties special issue constitutional because it specifically instructs the jury to consider the defendant's behavior alone. 928 S.W.2d 482, 516–17 (Tex.Crim.App.1996)(quoting Article 37.071 § 2(b)(2) ("the defendant himself")), *cert. denied*, 519 U.S. 1119, 117 S.Ct. 966, 136 L.Ed.2d 851 (1997). Appellant presents no argument compelling us to revisit *McFarland.* Point of error five is overruled.

In his sixth point of error, appellant claims the trial court should have granted his motion to set aside the indictment "because the Texas death penalty statute does not provide any meaningful appellate review regarding mitigation." We decided this issue adversely to appellant in *McFarland*, 928 S.W.2d at 498–99, where we explained that "we cannot meaningfully review the jury's normative decision on mitigation," because the mitigation issue is specifically designed to take into account the jurors' individual assessments of a capital defendant's deathworthiness.[6] Appellant's sixth point of error is overruled.

In his seventh point of error, appellant contends the trial court erroneously denied his motion to require the State to exercise its strikes, both peremptory and for cause, before appellant's strikes. We recently recognized that a trial court may allow the method urged by appellant, but has discretion in this regard:

A trial judge [presiding over voir dire in a capital case] has the discretion to decide (1) whether the State must voice both a challenge for cause or a peremptory challenge before the defendant, or (2) that both sides issue any challenges for cause before the State lodges a peremptory challenge.... Either method ... is acceptable under Article 35.13, and no error can result if either is followed.

*Hughes v. State*, No.73,129 slip op. at 9, 2000 WL 368930 (Tex.Crim.App. April 12, 2000) (citing *Bigby v. State*, 892 S.W.2d 864, 881 (Tex.Crim.App.1994) (plurality opinion), *cert. denied*, 515 U.S. 1162, 115 S.Ct. 2617, 132 L.Ed.2d 860 (1995)). The trial court did not abuse its discretion in overruling appellant's motion and requiring that both sides issue challenges for cause prior to the State's use of a peremptory challenge. *Hughes, supra.* Point of error seven is overruled.

In his eighth point of error, appellant claims the trial court erroneously permitted the State's expert witness, Dr. James Grigson, to testify because the State untimely disclosed its intention to call Grigson. The court's discovery order required the State to disclose all witnesses ten days before voir dire commenced. The State announced it would call Grigson four days after voir dire concluded.

We review the trial court's decision to permit Grigson's testimony under an abuse of discretion standard. *Nobles v. State*, 843 S.W.2d 503, 514 (Tex.Crim.App. 1992), *cert. denied*, 523 U.S. 1139, 118 S.Ct. 1845, 140 L.Ed.2d 1094 (1998). "If the trial judge allows a witness to testify who does not appear on the State's witness list, we consider whether the prosecutor's actions constitute "bad faith" and whether the defendant could have reasonably anticipated the witness' testimony." *Martinez v. State*, 867 S.W.2d 30, 39 (Tex.Crim.App.

---

States Constitution. *See Dewberry*, 4 S.W.3d at 744.

**6.** Appellant also complains, without argument, that the Eighth and Fourteenth Amendments require a factual sufficiency review of the future dangerousness special issue. This complaint renders point of error six multifarious and is inadequately briefed. Appellant further contends that the offense alone, without additional aggravating punishment-phase evidence, may be sufficient to support an affirmative answer to the future dangerousness special issue, but fails to argue how this fact renders the capital sentencing scheme unconstitutional. *See* TEX R.APP. PROC. 38.1(h). This contention also renders point of error six multifarious and is inadequately briefed.

1993), *cert. denied,* 512 U.S. 1246, 114 S.Ct. 2765, 129 L.Ed.2d 879 (1994).

██ The State informed appellant as soon as it anticipated calling Grigson as a witness. At the beginning of the guilt/innocence phase, the trial court conducted a hearing on appellant's motion for continuance. Appellant's trial counsel, Scott Monroe, testified that the prosecutor, Lucy Cavazos, announced on the first day of individual voir dire the possibility that the State might call Grigson to testify at the punishment phase. Monroe spoke with Grigson on the telephone later that week, and Grigson confirmed that the State had contacted him but that he was still unsure whether he would testify. After meeting with Grigson on the following day, Cavazos called Monroe from Dallas to inform the defense that she had decided to call Grigson. Monroe testified that, although Grigson's name had not appeared on the witness list, the State's disclosure provided him with three weeks notice that Grigson might testify. We conclude the State did not act in bad faith.

In addition, appellant could have reasonably anticipated Grigson's testimony in light of the State's announcement on the first day of the individual voir dire that it might call Grigson to testify at punishment. *See Martinez, supra* (defendant could have reasonably anticipated State's witness "in light of the widespread use of [expert] testimony [on the second punishment issue], coupled with the prosecutor's statements regarding his desire to present this type of testimony").

Appellant also complains the trial court abused its discretion in failing to grant his motion for a continuance to allow additional time to prepare for cross-examination of Grigson. The trial court did grant appellant additional days to prepare:

... as far as the motion for continuance, in the event [appellant] is found guilty of capital murder, if that is Tuesday, Wednesday or Thursday, whenever that is this week, I'm going to recess and start the punishment phase, if we get there, on Monday morning, to give defense counsel perhaps a couple of days at the end of the week and weekend to focus on those punishment issues, but I don't feel comfortable going past that.

The record reflects that the guilt/innocence phase concluded on Wednesday, February 25 and the punishment phase began on Monday, March 2. Therefore, appellant had two weekdays and a weekend to prepare for Grigson's testimony. Appellant's motion did not specify the number of days requested for the continuance and appellant did not object to the trial court's ruling. Appellant's eighth point of error is overruled.

██ In his ninth point of error, appellant claims the reasonable-firmness standard applicable to the defense of duress under section 8.05 of the Texas Penal Code is unconstitutional as applied to him because appellant is not and never will be "a person of reasonable firmness." [7] Appellant argues that because he could never avail himself of the duress defense, he was denied equal protection of the laws.

██ The party challenging a statute on equal protection grounds bears the burden of showing that the statutory classification is not rationally related to a legitimate state interest, where interests other than fundamental rights or suspect classification are affected. *Smith v. State,* 898 S.W.2d 838, 847 (Tex.Crim.App.)(plurality opinion), *cert. denied,* 516 U.S. 843, 116 S.Ct. 131, 133 L.Ed.2d 80 (1995); *see also Broxton v. State,* 909 S.W.2d 912, 918–

---

7. Section 8.05 recognizes duress as a defense to prosecution "when the actor engaged in the proscribed conduct because he was compelled to do so by threat of imminent death or serious bodily injury to himself or another." Section 8.05(c), further explains that compulsion "exists only if the force or threat of force would render *a person of reasonable firmness*

incapable of resisting the pressure." (emphasis added). At trial, appellant requested an instruction replacing the objective standard with one tailored to appellant: "Such compulsion exists only if the threat of force is such as would render *a person of similar firmness to the Defendant* incapable of resisting the pressure." (emphasis added).

19 (Tex.Crim.App.1995)(adopting reasoning of plurality opinion in *Smith* on equal protection claim); *FCC v. Beach Communications, Inc.,* 508 U.S. 307, 315, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993) (on rational-basis review, "those attacking the rationality of the legislative classification have the burden 'to negative every conceivable basis which might support it' "). Appellant cites no authority supporting his argument that the application of section 8.05 to persons who are not of reasonable firmness violates equal protection.[8] Neither does appellant develop his argument. He does not allege that such persons are a suspect class, subject to heightened scrutiny, or allege, if not a suspect class, why section 8.05 does not meet the rational basis test.[9] Appellant has not met his burden of showing that he has been denied equal protection under the law. Point of error nine is overruled.

In his tenth point of error, appellant claims the trial court erroneously restricted the testimony of two defense witnesses relating statements made by appellant concerning the offense.

 The court held a hearing on the State's motion *in limine* to determine whether a hearsay exception applied to the defense witnesses' testimony. At the hearing, Nadia Mireless, appellant's former girlfriend and mother of his child, testified that about an hour before the murder, "[appellant] had told [Reneau] to leave all the guns at home. [Appellant] had told [Reneau] to leave all the guns there, that they were just going to take Joe's truck back, that they weren't going to go through with it." Appellant argues that this statement was admissible under the statement-against-penal-interest and present-sense-impression exceptions to the hearsay rule.

Texas Rule of Criminal Evidence 803(24) defines a statement against interest as "a statement which ... at the time of its making ... so far tended to subject the declarant to civil or criminal liability ... that a reasonable man in his position would not have made the statement unless he believed it to be true." This exception does not apply to Mireless' testimony which tends to *absolve* appellant of criminal responsibility. *See Hafdahl v. State,* 805 S.W.2d 396 (Tex.Crim.App.1990) (defendant's statement that he did not know the victim was a police officer until after he shot him was inadmissible hearsay), *cert. denied,* 500 U.S. 948, 111 S.Ct. 2250, 114 L.Ed.2d 491 (1991). As such, the self-serving nature of appellant's statement that he did not want to participate in the offense outweighs the minor inculpatory significance of the statement. *Cf. State v. Arnold,* 778 S.W.2d 68, 69 (Tex.1989) (noting that when assessing statement against interest under Texas Rule of Civil Evidence 803(24), court must balance declarant's competing self-serving and contrary interests "to determine their predominant nature and ultimately the level of trustworthiness to be accorded").

 Nor is the statement a present-sense impression. Texas Rule of Criminal

---

**8.** Appellant cites to *United States v. Willis,* 38 F.3d 170 (1994), in which he says the "Fifth Circuit Court of Appeals considered a similar issue...." While *Willis* recognized that section 8.05 establishes an objective test, the defendant there did not raise an equal protection claim, nor did the Court address any equal protection concerns.

**9.** The Equal Protection Clause of the Fourteenth Amendment requires that "all persons similarly situated shall be treated alike" under the law. *Plyler v. Doe,* 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982). This generally means that "States must treat like cases alike but may treat unlike cases accordingly."

*Vacco v. Quill,* 521 U.S. 793, 799, 117 S.Ct. 2293, 138 L.Ed.2d 834 (1997). "If a legislative classification or distinction 'neither burdens a fundamental right nor targets a suspect class, we will uphold [it] so long as it bears a rational relation to some legitimate end.' " *Id.* (quoting *Romer v. Evans,* 517 U.S. 620, 116 S.Ct. 1620, 1627, 134 L.Ed.2d 855 (1996)). Appellant makes no argument as to whether the class of individuals he alleges is excluded by section 8.05(c), or is not a "suspect class." *Cf. City of Cleburne, Texas, et. al. v. Cleburne Living Center,* 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1975)( mental retardation is not quasi-suspect class).

Evidence 803(1) defines present-sense impression as "a statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." Appellant has indicated neither to the trial court nor to this Court what event or condition he was perceiving when he allegedly told Reneau to leave the guns at home. Accordingly, he fails to demonstrate how the trial court's refusal to admit the statement on this basis was an abuse of discretion. *Cf. Rabbani v. State*, 847 S.W.2d 555, 560 (Tex.Crim.App.1992) (statement that declarant saw defendant outside was admissible under 803(1) because the statement explained an event or condition), *cert. denied*, 509 U.S. 926, 113 S.Ct. 3047, 125 L.Ed.2d 731 (1993).

█ Appellant also argues the trial court should have admitted the statement of Linette Esensee, who was staying at appellant's and Reneau's house on the night of the murder. She testified at the *in limine* hearing that, when appellant and Reneau returned from the robbery, appellant stated that "[Reneau] had threatened to kill [appellant's child] and [Mireless] if he didn't go along with it." Appellant says this statement is admissible as either a statement against interest, because appellant admitted his involvement in the crime, or as an excited utterance because he was "still under the stress, excitement and shock of the crime he had committed."

Like the first statement, this statement tends more to exonerate than to inculpate appellant of criminal liability. Appellant clearly sought admission of this statement to support his duress defense, which if believed, would have entitled him to an acquittal. *See* TEX. PENAL CODE § 8.05. Thus, it falls outside the statement-against-interest exception.

█ Also, Esensee never indicated that appellant appeared excited or nervous when he allegedly told her that Reneau had threatened him. A hearsay statement is admissible as an excited utterance when it relates "to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." TEX.R.CRIM. EVID. 803(2). At the hearing, the State pointed out that appellant had returned home and spoken with Esensee in the evening, at least ten to twelve hours after the 6 a.m. robbery. During the interim, appellant and Reneau had traveled to appellant's parents' house, removed the money from the safe, and shopped for cars and stereos. Given the fourteen-hour delay and appellant's activities after the robbery, we hold that the trial court did not abuse its discretion in rejecting appellant's excited-utterance argument. Appellant's tenth point of error is overruled.

The judgment of the trial court is affirmed.