# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-00-00618-CR

**Leroy Jones, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 390TH JUDICIAL DISTRICT
### NO. 001879, HONORABLE TOM BLACKWELL, JUDGE PRESIDING

A jury convicted appellant Leroy Jones of possession of less than one gram of cocaine and assessed punishment, enhanced by prior felony convictions, at fifteen years' confinement in the Texas Department of Criminal Justice Institutional Division. *See* Tex. Health & Safety Code Ann. § 481.115 (West Supp. 2002); Tex. Penal Code Ann. § 12.42 (West Supp. 2002). On appeal, he contends the district court erred in denying his motion to suppress. We will affirm.

Austin Police Officer Paul Kaderli testified that at about 8:00 p.m. on November 2, 1999, he was riding a bicycle on duty in the Sixth Street area, assisted by another uniformed bicycle officer. Kaderli received over his radio the description of a suspect in an undercover drug buy. The suspect was described as a black male wearing blue jeans, a blue sweatshirt, and a blue baseball cap, last seen walking down a pedestrian underpass to Waller Creek; Kaderli was given no information about the suspect's possible age, height, weight, complexion, or facial hair. Kaderli and his partner entered the pedestrian tunnel and saw a black man wearing a blue sweatshirt, dark jeans, and a dark

baseball cap; Kaderli identified Jones as that man. Jones was about half a street width away, he was facing away from Kaderli, and his hands were in front of him. Kaderli could not see what, if anything, Jones was holding, but he did not see anything sticking out of Jones's clothes.

Kaderli approached Jones from behind; he did not think Jones knew the officers were there until Kaderli spoke. Kaderli said "for my own protection I wanted to see [Jones's] hands," so he told Jones, "Police officer, show me your hands." Jones complied and put out his hands, in which he had a brass copper pipe and a razor blade. Kaderli saw a white substance on the end of the crack pipe. He said, "I wasn't necessarily in fear of my own safety, but I was making sure that I was going to be safe. That's why I asked to see his hand." When asked whether safety was the sole reason he asked to see Jones's hands, Kaderli replied,

> No, I was observing officer safety. I wasn't in fear for my own safety. I was observing what they taught us in the academy, that his feet or mouth or head is not going to kill you, something in his hands will. So that's what I was doing, I was observing officer safety practice.

Kaderli testified that when he approached Jones, he could not tell whether Jones had a weapon.

Jones contends that the cocaine was seized as a result of an illegal *Terry* search. *See Terry v. Ohio*, 392 U.S. 1 (1968). He argues that Kaderli's search of his hand was not lawful because Kaderli testified that he was not afraid of Jones and that he asked to see Jones's hand because of his training in officer safety. Jones contends that Kaderli lacked specific, articulable facts sufficient to warrant a conclusion that Kaderli was in danger and, therefore, the evidence was illegally seized and should have been suppressed.

2

In a suppression hearing, the trial court is the sole trier of fact and judge of witness credibility and the weight to be given the testimony. *Wood v. State*, 18 S.W.3d 642, 646 (Tex. Crim. App. 2000); *Green v. State*, 934 S.W.2d 92, 98 (Tex. Crim App. 1996). In considering a trial court's decision, we view the evidence in the light most favorable to the trial court's ruling. *Wood*, 18 S.W.3d at 646. In general, we will not reverse a trial court's decision on a motion to suppress absent a clear abuse of discretion. *Wood*, 18 S.W.3d at 646. We afford almost total deference to the trial court's determination of the facts, especially when it depends on an evaluation of credibility or demeanor. *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000). However, we review *de novo* the trial court's application of the law to the facts. *Id.*

A police officer may stop and briefly detain a person for investigative purposes if the officer, in light of his experience, has a reasonable suspicion supported by articulable facts that criminal activity may be afoot. *Dowler v. State*, 44 S.W.3d 666, 669 (Tex. App.—Austin 2001, pet. ref'd). An officer may perform a search for weapons if he is justified in believing a suspect might be armed. *Terry*, 392 U.S. at 27; *O'Hara v. State*, 27 S.W.3d 548, 550 (Tex. Crim. App. 2000). The officer need not be certain the suspect is armed; the question is whether a reasonably prudent person in the same circumstances would be warranted in a belief that his safety or the safety of others was in danger. *Terry*, 392 U.S. at 27; *O'Hara*, 27 S.W.3d at 551.

Initially, we are not convinced that Kaderli's asking to see Jones's hands was a search under the Fourth Amendment. *See Maldonado v. State*, 853 S.W.2d 746, 748 (Tex. App.—Houston [1st Dist.] 1993, no pet.) (acting on tip that man fitting defendant's description was causing problems, officer was justified in approaching defendant, asking for identification, and requesting "that he

3

remove his hands from his pockets"). However, even under a *Terry* analysis, Kaderli's request was justified and reasonable under the circumstances of this encounter.

The court of criminal appeals has made it clear that an officer's failure to testify that he was afraid of the suspect does not automatically invalidate a pat-down search for weapons. *O'Hara*, 27 S.W.3d at 551. Further, not every pat-down search performed as a matter of routine will be overturned automatically. *Id.* at 554. Instead, we ask whether, under an objective analysis, a reasonably cautious person would be justified in making a precautionary search for weapons. *Id.* In justifying an officer's intrusion on an individual, the officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the particular intrusion. *Terry*, 392 U.S. at 21. When examining police searches and seizures, the level of suspicion a police officer must possess varies depending on the intensity of the police intrusion. *See Crockett v. State*, 803 S.W.2d 308, 311 (Tex. Crim. App. 1991); *Davis v. State*, 989 S.W.2d 859, 862-63 (Tex. App.—Austin 1999, pet. ref'd).

Here, Kaderli spotted appellant, who matched a suspect's description, in an area known to Kaderli for "narcotics trafficking, narcotics sales street level, one or two rocks at a time." Jones concedes that Kaderli "might have been justified in detaining" Jones under those circumstances. Kaderli could not see whether Jones held a weapon in his hands, and when asked if that was a concern, Kaderli answered, "Sure." Asked if he was concerned for his and his partner's safety, he answered, "Yes." Kaderli said he was trained to be aware of what a suspect held in his hands because that is where any danger would lie. The reason he was not in fear was because he was following the proper procedure for ensuring his safety. He did not testify that asking to see Jones's hands was a

4

matter of sheer routine; he said he was ensuring his safety and observing safety practices. The intrusion on Jones was significantly less than that imposed by even the most cursory pat-down weapon search. Jones was simply asked to show his hands so that the officers could be sure he was not holding anything that could be used as a weapon. Viewing the facts objectively and keeping in mind the level of police intrusion into Jones's constitutionally protected interests, we hold that the district court could have found that a reasonable officer in the same circumstances would have been justified in asking to see what, if anything, Jones held in his hands. The district court did not abuse its discretion in denying Jones's motion to suppress. We overrule Jones's issue on appeal and affirm the district court's judgment.

_____

Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Puryear

Affirmed

Filed:   January 25, 2002

Publish