11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

John Ross Cansino                   

Appellant

Vs.                   No. 11-02-00155-CR B 
Appeal from Howard County

State of Texas

Appellee

 

A jury
convicted John Ross Cansino for the capital murder of his son, a child less
than six years of age.  TEX. PENAL CODE
ANN. ' 19.03 (Vernon 2003).  Because the State did not seek the death
penalty, appellant was sentenced to confinement for life.    TEX. PENAL CODE ANN. ' 12.31 (Vernon 2003).  We affirm.

Issues
Presented

Appellant
presents three points of error on appeal. 
First, appellant claims that jury misconduct deprived him of a fair
trial.  Second, appellant argues that
the lesser included offenses of manslaughter and criminally negligent homicide
should have been included in the charge. Third, appellant claims that the trial
court should have granted a mistrial because the jurors received unauthorized
communications from the news media.  

Background
Facts

On January
19, 2001, appellant worked a late shift that ended at 11:00 p.m.  He returned home sometime between 2:00 a.m.
and 6:00 a.m.  When he arrived home,
appellant and his wife, Elaine Sepeda Cansino, had an argument.  The family slept late and eventually went to
a restaurant at noon. After lunch, the family went shopping and then returned
home.  Late in the afternoon, Elaine
left to pay a bill and to pick up their daughter from the home of Maria Cansino,
appellant=s sister-in-law.  Appellant remained at home alone with the victim, their
seven-week-old son.  








When
Elaine returned home with their daughter, appellant was holding the
victim.  Elaine noticed that the victim
appeared cold and was crying.  When she
held the victim, she noticed that the victim felt limp.  Appellant assured her that the victim was
fine, and he took their daughter in the family=s only car to buy dinner.  A
short time later, Elaine noticed that the victim was not breathing, and she ran
with the victim to Maria=s house down the street.  Maria
then drove Elaine to the hospital where the victim was pronounced dead.  The medical staff discovered that the back
of the victim=s head had suffered a blunt trauma.  James Crenshaw, a registered nurse,
testified that part of the victim=s skull felt like A[m]icrowave popcorn in a bag.@    

Dr. Ronald
F. Tucay  performed an autopsy and
determined that the victim died from being struck by a blunt object.  Dr. Tucay determined that the injuries,
which included four skull fractures, 
could not have occurred by accidentally dropping the victim but,
instead, resulted from multiple blows of great force.  He stated that the force necessary for the injuries would be
consistent with either an automobile accident or dropping the child from a
two-story building and that dropping the child from four feet onto a concrete
floor would not have caused the injuries. 
Dr. Tucay further determined that the victim=s ribs had been previously broken and stated
that the injury to the ribs was about two weeks old at the time of death.  

Dr. Joni
McClain performed a second autopsy and also determined that the victim=s injuries could not have occurred from being
dropped from a height of four feet.  Dr.
McClain testified that the injuries were comparable to a child being ejected
from an automobile during an automobile accident.  She further testified that the injuries involved more than one
blow.

When he
discovered that his wife had taken the victim to the hospital, appellant also
went to the hospital but remained silent as to the cause of the victim=s injuries. 
Detective Lupe Liedecke interviewed appellant on the day the victim
died, and appellant told him that he did not know what was wrong with the
victim.  Two days later, Detective
Liedecke took appellant=s formal statement concerning the events of the day that the victim
died.  Detective Liedecke then stepped
outside the room to allow appellant to review his statement.  When Detective Liedecke returned a few
minutes later, appellant was crying and supplemented his statement to say that
he accidentally dropped the victim while feeding him. 

 

 








Jury
Misconduct

In his
first point of error, appellant contends that jury misconduct deprived him of a
fair trial.  To show jury misconduct,
appellant attached to the amended motion for new trial an affidavit of one of
the jurors who stated that he was Abrow-beat[en]@ into
changing his vote to a guilty verdict. 
The State contends that appellant waived this issue because appellant
did not properly present his motion for new trial to the trial court. 

A motion
for new trial is a prerequisite to presenting a point of error on appeal when
it is necessary to adduce facts not in the record.  TEX.R.APP.P. 21.2.  The
defendant must Apresent@ the motion for new trial to the trial court within 10 days of filing
it unless the trial court, in its discretion, permits it to be presented and
heard within 75 days from the date when the court imposes or suspends sentence
in open court.  TEX.R.APP.P. 21.6.   The purpose of presentment is to put the
trial court on actual notice that the defendant desires the trial court to take
some action on the motion for new trial, such as a ruling or a hearing on
it.  Carranza v. State, 960 S.W.2d 76,
78 (Tex.Cr.App.1998).  Thus, the mere
filing of a motion for new trial alone is not sufficient to show presentment.  Carranza v. State, supra.

Appellant=s motion for new trial was necessary to
preserve this point of error because the alleged jury misconduct is not in the
record.  Both appellant=s motion for new trial and his amended motion
for new trial were timely.  However, the
record does not indicate that either of the motions were presented to the trial
court.  As in Carranza, there is
nothing in this record to indicate that the trial court actually knew  appellant had filed a motion for new trial
and desired a hearing on it.  Therefore,
appellant did not preserve this error.  

Moreover,
even if appellant had preserved error, his challenge of the validity of the
verdict based on the juror=s affidavit would fail.  A juror
may not testify as to any matter or statement occurring during the jury=s deliberation by way of testimony or
affidavit.[1]  TEX.R.EVID. 606(b); Hicks v. State, 15
S.W.3d 626, 630 (Tex.App. B Houston [14th Dist.] 2000, pet=n ref=d); Hines v. State, 3 S.W.3d 618, 621-22
(Tex.App. B Texarkana 1999, pet=n ref=d).  Appellant=s first point is overruled.








Lesser
Included Offense

In his
second point of error, appellant contends that the trial court erred by not
including the lesser included offenses of manslaughter and criminally negligent
homicide in the jury charge.  Either the
State or the defendant may request an instruction on a lesser included offense
when: (1) the lesser included offense is Aincluded within the proof necessary to establish the offense charged@ and (2) some evidence exists in the record
that would permit a rational jury to find that, Aif the defendant is guilty, he is guilty of only the lesser offense.@ 
Arevalo v. State, 943 S.W.2d 887, 889 (Tex.Cr.App.1997); Rousseau v.
State, 855 S.W.2d 666, 672-73 (Tex.Cr.App.), cert. den=d, 510 U.S. 919 (1993); Williams v. State, 34 S.W.3d 587, 588 (Tex.App. B Eastland 2000, pet=n ref=d).  Neither party disputes that
manslaughter or criminally negligent homicide is a lesser included offense of
capital murder.  Thus, we need address
only the second prong of the test.

The State
introduced appellant=s
signed confession where he stated that the victim=s death was an accident. 
Members of appellant=s family also testified that appellant told them that he was trying to
feed the victim and accidentally dropped him and that this accident caused the
head injuries that resulted in the victim=s death.  Appellant argues that
the evidence that appellant accidentally dropped the victim constitutes
evidence that appellant was guilty only of manslaughter or criminally negligent
homicide, if he was guilty at all. 

There is
no defense of Aaccident@ under the current Penal Code. 
The defense of Aaccident@ is encompassed within the Penal Code=s general culpability requirements.  Rogers v. State, No. 1412-01, 2003 WL
21184509 (Tex.Cr.App. May 21, 2003); Williams v. State, 630 S.W.2d 640, 644
(Tex.Cr.App.1982).  The culpability
requirement for manslaughter is that a person Arecklessly causes the death of an individual.@  TEX.
PENAL CODE ANN. ' 19.04 (Vernon 2003).  The culpability requirement for criminally
negligent homicide is that a person Acauses the death of an individual by criminal negligence.@  TEX.
PENAL CODE ANN. ' 19.05 (Vernon 2003).  

TEX. PENAL
CODE ANN. ' 6.03(c) & (d) (Vernon 2003) defines the
culpable mental states:








(c)  A person acts recklessly, or is reckless,
with respect to circumstances surrounding his conduct or the result of his
conduct when he is aware of but consciously disregards a substantial and
unjustifiable risk that the circumstances exist or the result will occur.  The risk must be of such a nature and degree
that its disregard constitutes a gross deviation from the standard of care that
an ordinary person would exercise under all the circumstances as viewed from
the actor=s standpoint.

 

(d) A
person acts with criminal negligence, or is criminally negligent, with respect
to circumstances surrounding his conduct or the result of his conduct when he
ought to be aware of a substantial and unjustifiable risk that the
circumstances exist or the result will occur. 
The risk must be of such a nature and degree that the failure to
perceive it constitutes a gross deviation from the standard of care that an
ordinary person would exercise under all the circumstances as viewed from the
actor=s standpoint.

 

Appellant=s statement contained the following:

 

When I heard my son woke up, I went to his
crib and picked him up.  I went to the
kitchen to fix him a bottle.  I did not
lay him on the couch, I was holding because he was crying.  I was holding with my left hand.  I had the bottle on my right hand.  I reached to up (sic) the bottle with my
left hand.  My little boy slipped out of
my arm.  He fell on the kitchen floor.

 

The
evidence that appellant accidentally dropped the victim, if true, would mean
that appellant did not have a culpable mental state and, therefore, could not
be guilty of homicide.[2]   There was no evidence to support a verdict
that appellant was guilty of manslaughter (reckless conduct) or of criminally
negligent homicide. The trial court properly concluded that the lesser included
offenses of manslaughter and criminally negligent homicide should not have been
included in the jury charge.  Appellant=s second point of error is overruled.

Tainted
Jury








In his
third point of error, appellant complains that the jury was tainted by
unauthorized communications received from the news media.  After the second day of trial, one of the
jurors informed the trial court that another juror had violated the trial court=s order by listening to the radio and reading
a newspaper account of the trial.  The
trial court interviewed each member of the jury.  Two of the jurors informed the court that Alternate Juror Teria
Lynn Dedmon stated that she had listened to the radio and read about the case
in the newspaper.  The two jurors told
the trial court that they immediately informed Alternate Juror Dedmon that she
had violated the court=s
order.  The only information relayed by
Alternate Juror Dedmon was that appellant could receive life imprisonment.  The trial court noted that the jurors were
informed during voir dire that appellant could receive life imprisonment. 

After
learning of the breach by Alternate Juror Dedmon, the trial court dismissed her
from the jury panel.  The original 12
jurors decided the case.

Mistrial
is a remedy only appropriate for a narrow class of highly prejudicial and
incurable errors.  Wood v. State, 18
S.W.3d 642, 648 (Tex.Cr.App.2000).  When
a juror converses with an unauthorized person about the case, injury to the
accused is presumed, and a new trial may be warranted.  Quinn v. State, 958 S.W.2d 395, 401
(Tex.Cr.App.1997); see also TEX. CODE CRIM. PRO. ANN. art. 36.22 (Vernon
1981).  However, the State may rebut
this presumption of harm.  Quinn v.
State, supra at 401.  In determining
whether the State rebutted the presumption of harm, appellate courts should
defer to the trial court=s resolution of the historical facts and its determinations concerning
credibility and demeanor.  Quinn v.
State, supra at 401.  

The person
who improperly listened to the radio and read the newspaper was the alternate
juror and did not take part in the verdict. 
No information about the case was transmitted to the other jurors except
that, if the defendant was found guilty, he faced life in prison.  The trial court determined that the jury
already knew this information and that there was no harm.  We agree. 
Appellant=s third point of error is overruled.

This
Court=s Ruling

The
judgment of the trial court is affirmed.

 

June 5, 2003                                                                            TERRY McCALL

Do not publish.  See TEX.R.APP.P. 47.2(b).                            JUSTICE

Panel consists of:  Wright, J., and

McCall, J., and Dickenson, S.J.[3]











[1]The rule provides for exceptions when testifying (1) on
matters of outside influence and (2) to rebut a claim that the juror was not
qualified to serve.  TEX.R.EVID. 606(b).





[2]A person commits criminally negligent homicide if he
intentionally, knowingly, recklessly, or with criminal negligence causes the
death of another.  TEX. PENAL CODE ANN. '19.01(a) (Vernon 2003).





[3]Bob Dickenson, Retired Justice, Court of Appeals, 11th
District of Texas at Eastland sitting by assignment.