NOS. 12-04-00068-CR
 12-04-00069-CR
 12-04-00070-CR
 12-04-00071-CR
 12-04-00072-CR
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS
PATRICK RANDALL POSTON,                      §                 APPEAL FROM THE THIRD
APPELLANT
 
V.                                                                         §                 JUDICIAL DISTRICT COURT OF

THE STATE OF TEXAS,
APPELLEE                                                        §                 ANDERSON COUNTY, TEXAS
                                                                                                                                                            
MEMORANDUM OPINION
            Following a jury trial, Patrick Randall Poston (“Appellant”) was convicted of escape (12-04-00068-CR), three counts of aggravated robbery (12-04-00069-CR), unauthorized use of a motor
vehicle (12-04-00070-CR), burglary of a building (12-04-00071-CR), and theft (12-04-00072-CR). 
The jury sentenced Appellant to twenty years of imprisonment and assessed a $5,000.00 fine for the
theft conviction, forty years of imprisonment and a $2,500.00 fine on each count of aggravated
robbery, and two years of imprisonment on the unauthorized use of a motor vehicle, burglary of a
building, and theft convictions. Appellant raises one issue on appeal.


 We affirm.
Background
            On March 7, 2002, Appellant was indicted for the offenses of escape, aggravated robbery,
unauthorized use of a motor vehicle, burglary of a building, and theft of a firearm. On April 8, the
State filed a “Notice of Joinder,” thereby consolidating all of the indicted offenses for one trial
because they arose out of the same criminal episode. On August 16, Appellant filed a motion to
suppress any post-arrest statement he made to law enforcement officers, arguing that the statements
were “involuntary, coerced, and enticed” from Appellant. The motion also stated that Appellant was
deprived of his right to counsel and that he did not make a knowing and intelligent waiver of that
right. 
            Appellant pleaded “not guilty” to the offenses and proceeded to a jury trial. Following the
presentation of evidence and arguments, the jury convicted Appellant on each indicted offense and
sentenced him to twenty years of imprisonment and assessed a $5,000.00 fine for the theft
conviction, forty years of imprisonment and a $2,500.00 fine on each count of aggravated robbery,
and two years of imprisonment on the unauthorized use of a motor vehicle, burglary of a building,
and theft convictions. 
            On appeal, Appellant challenges each conviction on the basis that the post-arrest statements
he made to law enforcement officers were obtained by coercion and were not voluntarily given.
 
Motion to Suppress
            After Appellant’s initial arrest, he wrote a statement detailing his escape from the Anderson
County Jail and his subsequent efforts to evade law enforcement personnel. The statement also 
detailed Appellant’s burglary of a bus station, where he stole a handgun, cigarettes, soft drinks, a
lighter, and cash. At the top of the statement, the following warnings appear:
 
___(1) You have the right to remain silent and not make any statement at all, and any statement
you make may be used against you at your trial.
___(2) Any statement you make may be used as evidence against you in court.
___(3) You have the right to have a lawyer present to advise you prior to and during any
questioning.
___(4) If you are unable to employ a lawyer, you have the right to have a lawyer appointed to
advise you prior to and during any questioning.
___(5) You have the right to terminate the interview at any time.
___(6) You knowingly, intelligently, and voluntarily waive these rights.

            Appellant wrote “P.P.,” his initials, in the blank space that appears before each warning. He
also noted the date and time of the statement at the bottom of each page and signed his name. At the
end of the statement, Appellant wrote, “Everything contained in this statement was my planning and
I recieved [sic] no assistance from anyone at anytime, nor did anyone know of my plans contained
in this statement.” Appellant contends that he did not waive the rights contained in the statement
knowingly, intentionally, and voluntarily, but waived them as a result of coercion and intimidation. 
Standard of Review and Applicable Law
When an appellant challenges the voluntariness of his confession, we review the trial court’s 
ruling under an abuse of discretion standard. See Wood v. State, 18 S.W.3d 642, 646 (Tex. Crim.
App. 2000). The trial court is the sole judge of the credibility of the witnesses at a suppression
hearing and of the weight to be given their testimony. Wyatt v. State, 23 S.W.3d 18, 23 (Tex. Crim.
App. 2000). “The determination of whether a confession is voluntary is based on an examination
of the totality of circumstances surrounding its acquisition.” Id. (quoting Penry v. State, 903
S.W.2d 715, 744 (Tex. Crim. App. 1995), rev’d in part on other grounds sub nom., Penry v.
Johnson, 532 U.S. 782, 804, 121 S. Ct. 1910, 1924, 150 L. Ed. 2d 9, 30 (2001)). 
            Article 38.22, section 2(a) of the Texas Code of Criminal Procedure provides that a written
statement made in response to custodial interrogation is not admissible “unless it is shown on the
face of the statement that . . . the accused, prior to making the statement, either received from a
magistrate . . . or received from the person to whom the statement is made [the required statutory
warnings].” Tex. Code Crim. Proc. Ann. art. 38.22, § 2(a) (Vernon Supp. 2004). This requirement
is satisfied if the warnings are read to the accused before he signs the statement, even if the statement
is written before the warnings are read. Dowthitt v. State, 931 S.W.2d 244, 258 (Tex. Crim. App.
1996). 
The Evidence Adduced at the Hearing on the Motion to Suppress
            Brian Wharton (“Wharton”), a sergeant with the Palestine Police Department, testified that
he spoke to Appellant at the Grapeland Police Department. Wharton said that when he asked
Appellant if he wanted to give a statement, Appellant told him he did and that he later wrote out a
statement. Wharton testified that the procedure he used was to
 
present them with the blank form which has the Miranda warnings affixed to the top of it. I ask them
to read along with me as I read the warnings to them, read each warning one at a time, tell them if you
understand the warning, place your initials by it, and we go all of the way through the warning with
them one at a time. And at the end, “Do you understand your warnings and are you willing at this time
to give a statement?” And they indicated with their initials again that they do understand it, [and] are
willing to provide that statement. 


            Before he gave Appellant the form, Wharton read over all of the warnings with Appellant,
and Appellant understood all of them. Appellant also initialed each warning with his initials, “P.P.” 
He stated that after he presented Appellant with the blank form, Appellant sat down and wrote out
his statement. 
            At the time Appellant was writing his statement, Wharton, Texas Ranger Rudy Flores, and
Captain Gregg Taylor were also present in the room. Wharton said that they were wearing firearms
at the time, but that wearing them was normal. When he asked Appellant to give the statement,
Appellant said that he would comply, and he denied that there was anything said by him, Ranger
Flores, or Captain Taylor to coerce Appellant into writing the statement. Wharton also stated that
they did not threaten, promise anything to Appellant in exchange for a written statement, or tell
Appellant that if he gave a statement then the State would “go easier” on him.


 
            On cross-examination by Appellant’s counsel, Wharton denied that Appellant told him that
he did not want to talk about what had happened. He did not tape any conversations he had with
Appellant, nor did he take any notes during his conversations with Appellant. Wharton denied
taking Appellant to “the back room [where] he hit the wall,” and he did not remember any other
officers saying, “Oh, give me a shot at him.” He also denied not giving Appellant his Miranda



warnings prior to any discussions. 
            Appellant also testified at the hearing and stated that when he arrived at the Grapeland Police
Department, he was placed in a room where, at a minimum, three to four law enforcement officers
were present at all times. He said that the officers were making threats to him, saying that they were
talking about “whipping [his] ass” and that if he did not give a statement, he “was going to begin to
look like pictures that [he] had seen in the media.” Appellant also stated that the officers were
saying, “Call me when the fun starts” and “I never saw a man outrun a bullet.” Therefore, in
Appellant’s mind, he was afraid that he was “going to be found dead, shot in the back outside of
Grapeland P.D. with a charge of attempted escape.” He felt that the only way for him not to be
harmed was to talk to the officers and give a statement. 
            Appellant further testified that when Wharton came to talk to him, he took him “to the same
back office where [he] had received [his] Miranda from the judge.” In the next sentence of his
testimony, however, Appellant said that he had not received any warnings from “the judge” prior to
talking with Wharton. Appellant stated that when he first talked to Wharton, he did not have
anything to say to him or to talk about and that he had not received any Miranda warnings from
anyone prior to talking with Wharton. He stated that Wharton then left for about twenty minutes,
came back, and took him to another room. Before he sat down in the room, Appellant testified that
someone in the room pushed him in the lower back with a foot and that the force pushed Appellant
into a wall. Appellant said that one of the officers then said that he “needed to watch [his] step.” 
He stated that he sustained a “knot” on his head as a result of the push. At that time, he said, he was
afraid of “not making it back to Anderson County.” 
            Appellant testified that when he sat down, he told Wharton he would talk about some things,
but not others, and that he was in fear and under pressure to begin talking to Wharton. He said that
Wharton taped the conversation they had and that after they talked, he was placed back in the room
with the other law enforcement officers. Appellant stated that while he was in that room, the officers
were threatening him, telling him about things that happen to individuals while in custody. At that
point, Appellant felt that his life was still in danger and that harm was imminent. 
            Appellant said that Wharton came back into the room, handed him a witness statement form,
and told him to start writing. He also stated that Wharton did not read him any warnings prior to the
time Appellant wrote the statement and that he did not receive sufficient time to read the rights prior
to initializing them on the statement. He then wrote the statement because he was afraid and felt like
he had no choice. He stated that he would not have written the statement but for the conduct of the
officers. 
            On cross-examination, Appellant acknowledged that the officers were present in the first
room he was taken to for security purposes. He also stated that Wharton made physical threats to
him, but no verbal threats. 
            The State then recalled Wharton to testify, and he denied making any threats to Appellant or
hearing any other officers threaten Appellant. He also denied pushing Appellant in the back with
his foot and telling him to “watch his step.” Finally, he stated that at no time did he do anything or
hear any other officer coerce, threaten, or force Appellant to talk to him. 
            Neither side offered any other evidence. The court denied Appellant’s motion to suppress,
expressly finding that Appellant’s statement was voluntarily given because the waivers were
knowingly and intelligently executed. 
Analysis
            Appellant testified that he was threatened by law enforcement officers after his arrest and that
those threats coerced him into writing a statement; however, Sergeant Wharton denied that Appellant
was threatened by him or any other officer. Wharton further testified that Appellant waived his
rights knowingly, intelligently, and voluntarily, and that Appellant wrote the statement after
acknowledging his rights in writing. The trial court, as the sole judge of the credibility of the
witnesses, chose to believe Wharton’s account of the post-arrest events surrounding Appellant’s
written statement when it denied Appellant’s motion to suppress. Based on the totality of the
circumstances surrounding the acquisition of Appellant’s statement, we hold that the requirements
of Article 38.22, section 2 have been satisfied and that the trial court did not abuse its discretion by
denying Appellant’s motion to suppress. Appellant’s sole issue is overruled.
 
Disposition
            The judgment of the trial court is affirmed.
 
                                                                                                    SAM GRIFFITH 
                                                                                                               Justice
Opinion delivered September 8, 2004.
Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.

(DO NOT PUBLISH)