**AFFIRMED; Opinion Filed April 7, 2016.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-15-00356-CR

## JASON DANIEL SEWELL, Appellant
## V.
## THE STATE OF TEXAS, Appellee

On Appeal from the 219th Judicial District Court
Collin County, Texas
Trial Court Cause No. 219-82792-2013

## MEMORANDUM OPINION
Before Justices Fillmore, Stoddart, and Schenck
Opinion by Justice Stoddart

A jury convicted Jason Daniel Sewell and sentenced him to fifty-two years' imprisonment for continuous sexual abuse of a child and to ten years for indecency with a child. In four issues, Sewell argues the trial court erred by failing to grant a mistrial and by sustaining an objection to his counsel's closing argument, and asserts he received ineffective assistance of counsel. We affirm the trial court's judgment.

The complainant, A.S., is Sewell's daughter. When she was approximately seven years old, Sewell told A.S. to go into his bedroom and take her clothes off. He then told her to lie down on the bed, covered her eyes "because he didn't want [her] to be scared," and touched her vagina with his hand. He did not touch her again for "a long period of time." When he did start touching her again, it became more frequent and consistent.

On several occasions, Sewell performed oral sex on A.S. and had her perform oral sex on him. Sewell tried to put his penis in A.S.'s vagina but never did because he did not want her to bleed. This type of abuse continued for several years, as the family moved from house to house.

A.S. and her three siblings had regular visitations with Sewell. A.S. slept on the couch in the living room, and Sewell came in at night to have her perform oral sex on him. By this time, she no longer needed to be told what to do because it was "routine," and she knew what he wanted her to do based on his gestures. Sometimes Sewell took her into his bedroom and used sex toys on her. The sexual abuse in McKinney lasted from approximately the summer of 2012 until spring break of 2013.

Before 2013, A.S. did not tell her mother about the abuse because Sewell made her think that her mother would be jealous and "come after [her]." In 2013, when A.S. was fourteen, Sewell stopped picking up the children for visitations. Several months later, A.S. started to feel "secure" and told her mother about the sexual abuse. A.S.'s mother called the police. As part of their investigation, the police arranged a forensic interview with an investigator from Child Protective Services (CPS) and a nurse to perform a Sexual Assault Nurse Examination.

The CPS investigator interviewed A.S. and testified that A.S. explained what happened to her in a narrative fashion and provided sensory details, describing how things tasted or felt, and used her hands and body to describe what happened to her. The CPS investigator did not see signs that A.S. had been coached.

The nurse who examined A.S. testified that A.S. told her that her father "was touching me and making me give him oral and doing the same thing to me." A.S. also said that Sewell tried to put his penis inside her vagina, put sex toys in her vagina, and showed her "nasty movies." A.S. described one of the sex toys as "long and purple and it was fuzzy." A.S. also said that Sewell had put his finger inside her vagina and "butt," licked her vagina and breast, and

French kissed her. A.S. said that the abuse began at age seven and continued until March 2013. Although, the nurse did not detect any physical signs of trauma during the exam, she did not expect to because several months had passed since A.S. had been abused.

When the police arrested Sewell they found sex toys matching A.S.'s descriptions. Sewell denied the allegations against him and asserted that he and A.S. had a "great" relationship until the divorce. He also said A.S. acquired her sexual knowledge by watching pornography and seeing a sex tape that he recorded.

## A. INEFFECTIVE ASSISTANCE OF COUNSEL

In his first and fourth issues, Sewell argues he received ineffective assistance of counsel because (1) counsel failed to object to portions of a recorded interrogation discussing Sewell's swinger lifestyle, sexual activities, and his refusal to take a polygraph test; (2) counsel did not request a hearing under article 38.072 of the Texas Code of Criminal Procedure or object to testimony from multiple outcry witnesses; and (3) counsel was effectively absent at the motion for new trial stage because he performed no meaningful work and "failed to raise matters outside the record for review."

To successfully assert an ineffective assistance of counsel challenge on direct appeal, an appellant must show that (1) counsel's representation fell below an objective standard of reasonableness and (2) the deficient performance prejudiced him; that is, but for the deficiency, there is a reasonable probability that the result of the proceeding would have been different. *Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003). An ineffective assistance of counsel claim must be "firmly founded in the record," and the record must "affirmatively demonstrate" the claim has merit. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). We commonly assume a strategic motive if any can be imagined and find counsel's

performance deficient only if the conduct was so outrageous that no competent attorney would have engaged in it. *Andrews v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005).

The court of criminal appeals has made clear that, in most cases, a silent record which provides no explanation for counsel's actions will not overcome the strong presumption of reasonable assistance. *Rylander*, 101 S.W.3d at 110. Further, counsel should ordinarily be accorded the opportunity to explain his actions before being denounced as ineffective. *Goodspeed*, 187 S.W.3d at 392. Because the reasonableness of trial counsel's choices often involve facts that do not appear in the appellate record, an application for writ of habeas corpus is the more appropriate vehicle to raise ineffective assistance of counsel claims. *See Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002).

Although Sewell filed a motion for new trial, he did not raise his claim for ineffective assistance of counsel; the record is silent regarding trail counsel's reasons for the decisions he made. Trial counsel was not given an opportunity to explain his actions. *Goodspeed*, 187 S.W.3d at 392. The undeveloped record before us does not affirmatively demonstrate that counsel was ineffective or overcome the presumption of effective assistance of counsel. *Andrews*, 159 S.W.3d at 101-02. Further, Sewell does not suggest any additional grounds on which his counsel would have requested a new trial, and, therefore, he has failed to show his counsel's performance fell below a reasonable standard.

We overrule Sewell's first and fourth issues.

## B.      MOTION FOR MISTRIAL

In his second issue, Sewell argues the trial court erred by denying his motion for mistrial because the State vouched for A.S.'s credibility through an improper question to the CPS investigator:

> [STATE]      Did you see any indications of coaching?
> [WITNESS]    I did not.

[STATE]      Did you see any indications that she didn't experience what she was describing to you?

Sewell's counsel objected on grounds that the State's question called for the investigator to comment on A.S.'s truthfulness. He then asked for a jury instruction and moved for a mistrial. The trial court sustained the objection and instructed the jury to disregard, but denied the motion for mistrial.

Because the trial court sustained Sewell's objection and instructed the jury to disregard the arguments, the only adverse ruling was the trial court's denial of the motion for mistrial. We review a trial court's ruling on a motion for mistrial for an abuse of discretion. *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007). A trial court abuses its discretion if its decision is outside the zone of reasonable disagreement. *Id.* "Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required." *Id.* "[W]hether a mistrial should have been granted involves most, if not all, of the same considerations that attend a harm analysis." *Id.* These factors include: (1) the severity of the misconduct, i.e., the magnitude of the prejudicial effect of the prosecutor's remarks; (2) the measures adopted to cure the misconduct, i.e., the efficacy of any cautionary instruction by the judge; and (3) the certainty of conviction absent the misconduct, i.e., the strength of the evidence supporting the conviction. *Id.*

"A mistrial is a device used to halt trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile." *Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000). It is appropriate only for "a narrow class of highly prejudicial and incurable errors." *Id.* Thus, a trial court properly exercises its discretion to declare a mistrial when, due to the error, an impartial verdict cannot be reached or a conviction would have to be reversed on appeal due to "an obvious procedural error." *Id.* Asking an improper question will seldom call for a mistrial, because, in most cases, any harm can be cured

by an instruction to disregard. *Id.* We generally presume the jury followed the trial court's instructions. *Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998).

Even if we assume the State's question was improper, the trial court did not abuse its discretion by overruling the motion for mistrial. The complained-of question was only asked one time; the State did not attempt to repeat the question or otherwise solicit the same information from the investigator. Additionally, the court took curative measures by sustaining the objection and promptly instructing the jury to disregard the question. There is no indication in the record that the jury disregarded the instruction and the question was not so outrageous that the jury would ignore the instruction to disregard. *See Colburn*, 966 S.W.2d at 520.

Finally, we do not doubt the certainty of the conviction absent the alleged misconduct. Sewell contends that the conviction depends on the jury considering A.S. a credible witness because the State provided no forensic evidence and A.S.'s outcry was delayed. However, A.S. testified before the jury, giving the jury an opportunity to assess her truthfulness. Further, the CPS investigator's testimony supported a finding of A.S.'s truthfulness. The investigator stated that A.S. provided details of the abuse, explained the chronology of events, provided adequate sensory information, and had appropriate emotional responses during the interview. A.S. exhibited the behaviors the investigator expects to see in child abuse victims and she did not believe A.S. was coached.

Under the facts of this case, the trial court did not abuse its discretion by denying Sewell's motion for mistrial. We overrule Sewell's second issue.

## C.    IMPROPER JURY ARGUMENT

In his third issue, Sewell argues the trial court erred by sustaining the State's objection to defense counsel's closing argument because it implied to the jury that the argument was improper.  During the guilt-innocence phase, Sewell's counsel stated in closing argument that this is "a case that starts off with a minimum of 25 years" to life.  The State's objection to improper argument was sustained and the court instructed the jury to disregard.

We review a trial court's ruling on an objection to improper jury argument for abuse of discretion. *Garcia v. State*, 126 S.W.3d 921, 924 (Tex. Crim. App. 2004).  Proper jury argument generally falls within one of four areas: (1) summation of the evidence, (2) reasonable deduction from the evidence, (3) answer to opposing counsel's argument, and (4) plea for law enforcement. *Freeman v. State*, 340 S.W.3d 717, 727 (Tex. Crim. App. 2011). During the guilt-innocence phase, "a plea to the jury to consider the amount of punishment, rather than the facts, in determining the offense for which an appellant should be convicted is manifestly improper." *McCullen v. State*, 659 S.W.2d 455, 459 (Tex. App.—Dallas 1983, no pet.); *see also Mendoza v. State*, No. 05-11-01069-CR, 2012 WL 6014748, at *1 (Tex. App.—Dallas  Dec. 4, 2012, no pet.) (not designated for publication).

Sewell's counsel's asked the jury to consider the range of punishment when deciding whether to convict, which is not a proper jury argument. *Id.*  Thus we conclude the trial court did not abuse its discretion by sustaining the State's objection.  We overrule Sewell's third issue.

We affirm the trial court's judgment.


/Craig Stoddart/
CRAIG STODDART
JUSTICE

Do Not Publish
Tex. R. App. P. 47.2(b)
150356F.U05

–7–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JASON DANIEL SEWELL, Appellant

No. 05-15-00356-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 219th Judicial District Court, Collin County, Texas
Trial Court Cause No. 219-82792-2013.
Opinion delivered by Justice Stoddart.
Justices Fillmore and Schenck participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 7th day of April, 2016.