Opinion issued February
16, 2012



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00925-CR

———————————

Lonnie Dawyne Wilson, Appellant

V.

The State of Texas, Appellee



 



 

On Appeal from the 230th District
Court

Harris County, Texas



Trial Court Case No. 1254215

 



 

 

MEMORANDUM OPINION

 

          Lonnie
Dawayne Wilson was convicted by a jury of aggravated
robbery, based on a finding that he exhibited a deadly weapon.[1]  The jury assessed punishment at 20 years’
confinement.  In two issues, Wilson contests
(1) the sufficiency of the evidence that he exhibited a gun and (2) the trial
court’s denial of his motion for a mistrial based on the State’s closing
argument.  We affirm.

Background

          Wilson admits
that he robbed the victim, Juana Mendoza-Rodriguez.  The sole substantive fact issue he contests
is whether he had a gun at the time of the robbery.

          Mendoza-Rodriguez
was confronted by Wilson at her apartment complex as she was getting out of her
van:

          Q. Okay. All right.
 Now, when you saw the man standing
there, at some point -- I mean, we sometimes get out of the cars and see people
near us.  At some point, did you realize
that he may have another purpose in mind?

          A. Yeah.  Because when I turned around and saw him, I
had eye contact with him, but when I looked down, he had a gun and he went like
this, but I don’t know what kind of gun, but I know it was a gun because he
went like this like this, you know (indicating).

          Q. Well, let’s talk about this.  What color was the gun?

          A. I don’t remember.

          Q. Was it light or dark?

          A. It was dark.

          Q. It was a dark-colored gun?

          A. Yes, sir.

          Q. Okay. And did it have a cylinder or
did it have a slide to pull back?

          A. I remember he went like this.  Because he had the gun like this and he went
like this (indicating).

          Q. Now, when you say “like this,” for
purposes of the record, you are pointing your finger down and with your other
hand you are pulling it up?

          A. Yeah.

          . . . .

          A. But, first of all, the first thing
he told me, and I looked at his eyes, I had eye contact, he told me: Shut the
fuck up.  That’s what he told me.

          . . . .

          Q.
[State]  So, he
said that and then he slid the gun back?

          A.
Yes, sir.

          Q.
Did it make a noise like that (indicating).

          A.
Yes.

          Q.
Now, ma’am, are you familiar with guns?

          A.
No, sir.

          Q.
Is that a noise that you are used to hearing?

          A.
No, sir.

          Q.
Does that stick in your mind?

          A. Yes, sir.

          . . . .

          Q.
[State]  So, he
took -- it was your purse and your cell phone?

          A.
My purse and my cell phone and he took the keys.

          Q. Were the keys in your hands?

          A.
Yes, sir.

          Q.
He took those from you?

          A.
Yes, sir.

          Q.
Did he talk to you any more?

          A.
No.

          Q.
What did he do next?

          A.
Next, he told me: Go where you were going to go, but don't look back.

 

On cross-examination, Mendoza-Rodriguez said that Wilson
never said anything like “I’m going to kill you” or “I’m going to shoot you.”  She also said she was “pretty scared” and the
whole incident only took a few seconds.

          Mendoza-Rodriguez
then went to her apartment and told her husband Julio Casillas
she had been robbed.  After Julio called
9-1-1, he went outside in time to see someone get into his wife’s van and drive
away.  Casillas
then got into his car and gave chase.  When
Casillas caught up with Wilson, he pulled in front of
the stolen van and disabled it.  Wilson then
jumped out and ran, and Casillas eventually lost
sight of him.  Casillas
testified that he never saw a gun while Wilson was fleeing.

          The Harris
County Sheriff’s Department arrived at the scene and set up a perimeter.  Wilson was discovered hiding under a debris
pile, without a gun.  Deputies, who searched
the area for some 30 minutes, found no gun. 
Sergeant Joe Halm testified that the storm
drains, trash piles, dumpsters, and shrubbery made it like “trying to find a
needle in a haystack.”

Discussion

Sufficiency of the evidence

          Wilson’s first issue contends that the
evidence is legally insufficient to support his conviction because, notwithstanding
Mendoza-Rodriguez’s testimony that she saw a gun in his hand
and saw and heard him pull back the gun’s slide, no rational juror
could have found that he used a gun.

          We must apply
the Jackson v. Virginia sufficiency
standard of review to complaints styled as legal or factual sufficiency
challenges concerning the elements
of a criminal offense.  Jackson, 443 U.S. 307, 320, 99 S. Ct. 2781,
2789 (1979); see Ervin v. State, 331
S.W.3d 49, 52–56 (Tex. App.—Houston [1st Dist.] 2010,
pet. ref’d)
(citing Brooks v. State, 323 S.W.3d 893, 894–913 (Tex. Crim. App. 2010)). 
Under the Jackson standard, evidence is insufficient to support a conviction
if, considering all the record evidence in the light most favorable to the
verdict, no rational fact‑finder could have found that each essential
element of the charged offense was proven beyond a reasonable doubt.  See
Jackson, 443 U.S. at 317, 319, 99 S. Ct. 2788, 2789; Laster v.
State, 275 S.W.3d 512, 517
(Tex. Crim. App. 2009); Williams v. State, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).  If the evidence is legally
insufficient, then the “only proper verdict” is acquittal.  Tibbs v. Fla., 457 U.S. 31, 41–42, 192 S. Ct.
2211, 2218 (1982).

          Our role is that of a due­‑process
safeguard, ensuring only the rationality of the trier of fact’s finding of the
essential elements of the offense beyond a reasonable doubt.  See Moreno v. State, 755 S.W.2d 866, 867
(Tex. Crim. App. 1988).  It
is the function of the trier of fact to resolve any
conflict of fact, to weigh any evidence, and to evaluate the credibility of any
witnesses.  See Dewberry v. State, 4 S.W.3d 735, 740
(Tex. Crim. App. 1999).  We therefore resolve
any inconsistencies in the evidence in favor of the verdict, and “defer to the
jury’s credibility and weight determinations.”  See Marshall v. State, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006).

          Under the Jackson standard, any conflicts or inconsistencies in the witness’s
testimony, including any conflicts regarding the weight of the evidence, were
exclusively within the jury’s province to resolve.  See Dewberry, 4 S.W.3d at 740; Marshall, 210 S.W.3d at 625 (requiring
appellate courts to resolve any inconsistencies in evidence in favor of verdict
and “defer to the jury’s credibility and weight determinations”).  Viewing the evidence
in the light most favorable to the verdict, we conclude that a rational fact-finder
could have found, beyond a reasonable doubt, that Wilson exhibited a gun during
the offense, even though the gun was never recovered.  See
Brown v. State, 212 S.W.3d 851, 861–62 (Tex. App.—Houston [1st Dist.] 2006,
pet. ref’d).  Therefore,
we hold that the evidence is sufficient to support appellant’s conviction.

          We overrule Wilson’s first issue.

Discussion of parole during closing argument

          In his second issue, Wilson contends the
trial court erred in denying his request for a mistrial.  Wilson stipulated to prior convictions for burglary
and evading arrest. During closing argument, Wilson’s lawyer argued for the
minimum sentence in the aggravated robbery case, based on the punishment from
the prior convictions:

That’s
what you know about him.  That’s the
extent of his history.  A burglary of habitation, a felony at the age of 18; one
misdemeanor two years later.  And
he’s already done seven years in prison for that at age of 22.

 

In response, the State
commented on Wilson’s previous sentence: “When he was arrested
in 2008, he got sentenced to seven years in the Texas Department of Criminal Justice.
 I don’t want to do the math for anybody
here, but it hasn’t been seven years since 2008.”  Wilson’s lawyer objected, which was
sustained, moved to instruct the jury to disregard the State’s argument, which
was sustained, and moved for a mistrial, which was denied.

          A trial court’s denial of a motion for
mistrial is reviewed under an abuse‑of‑discretion standard.  Wood v. State, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000).  Mistrial is appropriate for only highly
prejudicial and incurable errors.  Id. 
It may be used to end trial proceedings when faced with error so
prejudicial that expenditure of further time and expense would be wasteful and
futile.  Id.  Assuming, without
deciding, that the State’s argument was not invited, we hold that the trial
court’s instruction to disregard cured any error.  See
Helleson v. State, 5 S.W.3d 393, 397–98 (Tex.
App.—Fort Worth 1999, pet. ref’d).

          We overrule Wilson’s second issue.

Conclusion

          We affirm the judgment of the trial
court.

 

 

                                                                      Jim
Sharp

                                                                      Justice


 

Panel
consists of Justices Jennings, Sharp, and Brown.

Do not
publish.  Tex. R. App. P. 47.2(b).











[1]         Tex. Penal Code Ann. § 29.03 (West 2011).