

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-15-00618-CR

Benjamin James **FOX**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 216th Judicial District Court, Kerr County, Texas
Trial Court No. A 14-678
Honorable N. Keith Williams, Judge Presiding

Opinion by:    Marialyn Barnard, Justice

Sitting:        Karen Angelini, Justice
               Marialyn Barnard, Justice
               Rebeca C. Martinez, Justice

Delivered and Filed:  January 11, 2017

AFFIRMED

A jury convicted appellant Benjamin Fox of aggravated sexual assault of a child, and the trial court sentenced him to forty-five years' confinement. In two issues, Fox argues the trial court erred in: (1) denying his motion for continuance and allowing testimony from undisclosed witnesses and (2) admitting evidence of excessive extraneous offenses during the guilt/innocence phase of trial. We affirm.

## BACKGROUND

Fox is A.F.'s father. At the time of the offense, Fox was married to A.F.'s mother. One evening, she discovered Fox and A.F. standing nude in the bathroom together. According to A.F.'s mother, Fox was standing in front of A.F. with his boxers slightly lowered, and he leaned over to kiss A.F. A.F.'s mother asked them what was going on, and Fox explained he was going to use the bathroom when he discovered A.F in the bathroom getting ready to take a shower. At that point, both A.F.'s mother and Fox left the bathroom. Later that evening, A.F.'s mother asked A.F. about the incident, and A.F. stated Fox was touching her breasts. A.F. told her mother that for the past two to three months, Fox had been touching her breasts and vagina and was "fingering" her. A.F. also described an instance when Fox penetrated her with an electric toothbrush.

The next morning after Fox left for work, A.F.'s mother called the police. Shortly thereafter, Officer Stephen Wherry of the Kerrville Police Department arrived and spoke to both A.F. and A.F.'s mother about the bathroom incident. A.F. also told Officer Wherry that for the past three months, Fox had been coming into her bedroom each night, rubbing her legs and breasts and placing his fingers inside her vagina. Officer Wherry also spoke to Fox, who had returned home from work that morning approximately twenty minutes after Officer Wherry arrived at the house. Fox denied touching A.F., but admitted he had kissed A.F. when she was naked in the bathroom.

Fox was ultimately indicted for the offense of aggravated sexual assault of a child younger than fourteen years of age. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B), (a)(2)(B) (West Supp. 2016). The indictment specifically alleged Fox had "intentionally or knowingly caused the penetration of the female sexual organ of [A.F.], a female child then and there younger than fourteen years of age, by inserting his, the said defendant's, finger in said female sexual organ." Prior to trial, the State provided appellant with notice of its intention to use evidence of prior

extraneous offenses pursuant to Article 38.37 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. art. 38.37 § 2(b) (West Supp. 2016) (providing that evidence of defendant committing separate sexual offenses may be admitted during trial for any bearing evidence has on relevant matters). In its notice, the State indicated it intended to offer evidence that on multiple occasions from June 2014 until September 17, 2014, Fox committed the offenses of sexual assault by penetrating the sexual organ of A.F. with his finger(s), and penetrating the anus and mouth of A.F. with his penis. The State also indicated it intended to introduce evidence of the offense of indecency with a child by causing an electric toothbrush to contact the sexual organ of A.F.

The record reflects that after the jury was empaneled, Fox requested a continuance, arguing the State's notice of intent to introduce extraneous offenses pursuant to Article 38.37 was deficient, impairing his ability to adequately prepare for trial.[1] Fox also argued the State failed to timely disclose the list of witnesses it intended to call at trial, and therefore, any testimony elicited from such witnesses should be excluded or, in the alternative, his request for a continuance should be granted to afford him time to prepare an adequate defense. In response, the State argued it provided sufficient notice of its intent to offer evidence of certain extraneous matters, and it believed it had timely sent Fox a copy of the witness list. Yet, after consulting its computer, the State admitted it mistakenly failed to forward a scanned copy of the witness list to Fox. The State added, however, that the names of all of the witnesses it intended to call during trial — with the exception of one rebuttal witness — were provided to Fox during discovery. The trial court denied Fox's request for a continuance and allowed all of the State's witnesses to testify.

---

[1] Specifically, Fox challenged the State's intention to introduce evidence concerning other instances of sexual assault against A.F. that were referenced in a separate twelve-count indictment by date. According to Fox, the State did not provide him with notice of its intent to introduce such evidence, arguing the State only provided him with notice of extraneous offenses that occurred during a "broad range of dates." We note, however, that on appeal, Fox does not challenge the State's adequacy of notice as it pertains to extraneous offenses under Article 38.37. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37 (requiring that State provide notice of intent to introduce evidence of extraneous offenses during guilt/innocence stage of trial at least thirty days prior to trial).

At trial, the jury heard testimony from a number of witnesses, including A.F.'s mother, Officer Wherry, A.F., T.F. – A.F.'s brother, and the sexual assault nurse examiner ("SANE"). The jury ultimately found Fox guilty of the charged offense, and based on the jury's recommendation, the trial court sentenced him to forty-five years' confinement. Fox then perfected this appeal.

### ANALYSIS

Fox raises two issues on appeal. First, he contends the trial court erred in admitting testimony from witnesses that were not properly disclosed by the State, compounding the error by denying his motion for continuance. Second, he complains the trial court erred in admitting evidence of numerous extraneous offenses during the guilt/innocence phase of trial. We address each complaint in turn.

### *Admissibility of Undisclosed Witnesses*

Fox asserts the trial court erred in admitting testimony from the State's witnesses, and denying his motion for continuance relating thereto, because the State did not provide proper notice in violation of the trial court's discovery order. According to Fox, the Standing Docket Control Order required the State to provide him with a witness list at least one day before trial.

In general, upon request, the State must provide the defendant notice of those it intends to call as witnesses during trial. *See* TEX. CODE CRIM. PROC. ANN. art. 39.14(b); *Martinez v. State*, 867 S.W.2d 30, 39 (Tex. Crim. App. 1993); *Hamann v. State*, 428 S.W.3d 221, 227 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd). With regard to rebuttal witnesses, the State is typically not required to disclose the names of these witnesses as it cannot foresee the theories or evidence the defense will present at trial. *Beets v. State*, 767 S.W.2d 711, 747 (Tex. Crim. App. 1987).

If the trial court allows an undisclosed witness to testify, we review the decision for an abuse of discretion. *Martinez*, 867 S.W.2d at 39; *Castaneda v. State*, 28 S.W.3d 216, 223 (Tex. App.—El Paso 2000, pet. ref'd). "If the trial judge allows a witness to testify who does not appear

on the State's witness list, we consider whether the prosecutor's actions constitute 'bad faith' and whether the defendant could have reasonably anticipated the witness's testimony." *Wood v. State*, 18 S.W.3d 642, 649 (Tex. Crim. App. 2000); *Hamann*, 428 S.W.3d at 227-28. In considering whether the State acted in bad faith, reviewing courts have considered the following: (1) whether the State intended to deceive; (2) whether the State's notice left the defense with adequate time to prepare; and (3) whether the State freely provided the defense with information. *Martinez*, 867 S.W.2d at 39; *Hardin v. State*, 20 S.W.3d 84, 88 (Tex. App.–Texarkana 2000, pet. ref'd).

Here, there is no evidence the State acted in bad faith. *See Wood*, 18 S.W.3d at 649; *Hamann*, 428 S.W.3d at 227-28. The record reflects that during the pretrial hearing, when the prosecutor discovered Fox had not received its witness list, she checked her computer files to determine whether she had sent the list to Fox. The prosecutor explained she thought she had sent the list to Fox after scanning the list to her computer; however, after looking through her emails, she stated, "It looks like I did not forward it. . . . I have where I scanned it in to forward. . . . I thought I had sent it to him, and I didn't because its not in my sent [email]." Thereafter, Fox's counsel conceded that he believed the State's actions were not willful, but rather a mere mistake by the prosecutor. Thus, we conclude there is no evidence the State intended to deceive Fox. *See Martinez*, 867 S.W.2d at 39; *Hardin*, 20 S.W.3d at 88.

Furthermore, the record reflects Fox could have reasonably anticipated the testimony from the witnesses the State intended to call. *See Wood*, 18 S.W.3d at 649; *Hamann*, 428 S.W.3d at 227-28. All of the witnesses' names — with the exception of one rebuttal witness — were provided to Fox by the State in other discovery materials — specifically, the offense report and medical report prepared by the SANE. These discovery materials were provided to Fox immediately after he was indicted. Accordingly, Fox could have reasonably anticipated that the State would have called the individuals listed in the offense report as well as the SANE who

prepared the medical report to testify on its behalf. *See Wood*, 18 S.W.3d at 649; *Hamann*, 428 S.W.3d at 227-28. With regard to the rebuttal witness, although the State failed to disclose the name timely, the State was not required to disclose the name. *See Beets*, 767 S.W.2d at 747. The record reflects that the State had included the rebuttal witness on its list as a courtesy to Fox, further evidencing its intention not to deceive him. We therefore hold the trial court did not abuse its discretion in allowing all of the State's witnesses to testify because there is no evidence the State engaged in bad faith or that Fox would not have reasonably anticipated the witnesses' testimony. *See Wood*, 18 S.W.3d at 649; *Hamann*, 428 S.W.3d at 227-28.

Fox argues the State's lack of bad faith is irrelevant and under *Lathrop v. State*, we must reverse his judgment of conviction and remand the cause to the trial court for a new trial. *See* No. 04-04-00156-CR, 2005 WL 49480 (Tex. App.—San Antonio Jan. 12, 2005, pet. ref'd) (mem. op., not designated for publication). We disagree for two reasons. First, *Lathrop* is an unpublished decision. The Texas Rules of Appellate Procedure specifically provide that although unpublished criminal opinions may be cited, they have no precedential value. TEX. R. APP. P. 47.7(a). Thus, *Lathrop* has no precedential value. *See id.* Second, Fox's reliance on *Lathrop* is misplaced. In *Lathrop*, the defendant filed a Motion to Disclose the Existence of Extraneous Offenses and a Motion to List State's Witnesses. *Id.* at *1. With regard to the disclosure of witnesses, the trial court ordered the State to provide the defendant with a list of witnesses it intended to call during trial at least ten days before trial. *Id.* Thereafter, the defendant sent the State a letter, requesting a list of extraneous crimes or bad acts it intended to offer into evidence. *Id.* The State did not comply with either the trial court's order or the defendant's letter request. *Id.* The defendant ultimately pled guilty and during the punishment phase of trial when the State called its first witness, the defendant objected to any witnesses being called because the State had not disclosed

any witnesses; however, in light of the objection, the trial court allowed the witnesses to testify as to other extraneous acts. *Id.*

On appeal, the defendant argued the trial court erred in allowing the State to introduce evidence of extraneous crimes or bad acts through the testimony of undisclosed witnesses because the State failed to provide the defendant with notice of its intent to introduce evidence of extraneous acts. *Id.* To determine whether the State was required to provide the defendant with notice of its intent to offer extraneous matters into evidence, this court reviewed Article 37.07 of the Texas Code of Criminal Procedure. *Id.* Article 37.07 provides that upon timely request by the defendant, the State must give the defendant notice of its intent to "introduce an extraneous crime or bad act that has not resulted in a final conviction" during the punishment phase of trial. *Id.* Concluding the defendant's letter constituted a timely request, we held "the State was required to give notice of its intent to introduce extraneous evidence," and because the evidence of extraneous offenses had an injurious effect on the trial court's sentencing decision, we reversed the trial court's judgment as to punishment and remanded the cause for a new punishment hearing. *Id.* at *2.

Contrary to Fox's assertion that *Lathrop* is controlling, *Lathrop* does not govern the State's requirement to disclose the names of witnesses it intends to call during trial. Rather, *Lathrop* concerns Article 37.07's notice requirement as it applies to the State's intention to offer evidence of extraneous crimes or bad acts during the punishment phase of trial. *See id.* at *1; *see also Huizar v. State*, 12 S.W.3d 479, 481 (Tex. Crim. App. 2000). Here, the clerk's record includes a copy of the State's "Notice of Intention to Use Extraneous Matters," listing each of the extraneous matters the State intended to offer into evidence in accordance with Article 37.07. Nowhere in his brief does Fox argue the State failed to provide him with notice of its intent to introduce extraneous offenses during the punishment phase of trial. Accordingly, we conclude *Lathrop* does not apply, and we hold the trial court did not abuse its discretion in allowing all of the State's witnesses to

testify, nor did it err in denying Fox's motion for continuance based on the alleged lack of proper disclosure. We therefore overrule Fox's first issue.

### *Extraneous Offenses*

Fox next argues the trial court erred by admitting evidence of extraneous offenses involving other instances of sexual misconduct between himself and A.F. because the probative value of the evidence was substantially outweighed by the danger of unfair prejudice under Texas Rule of Evidence 403. *See* TEX. R. EVID. 403. Specifically, Fox contends that the "sheer volume" of extraneous offenses produced by the State was so "excessive" that it was unfairly prejudicial, influencing the jury to convict him on improper grounds.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Aragon v. State*, 229 S.W.3d 716, 724 (Tex. App.—San Antonio 2007, no pet.) (citing *Resendiz v. State*, 112 S.W.3d 541, 546 (Tex. Crim. App. 2003)). A trial court does not abuse its discretion if its ruling lies within the zone of reasonable disagreement. *Id.* (citing *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003)).

Rule 403 provides that upon a proper objection, the trial court may exclude relevant evidence if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *See* TEX. R. EVID. 403; *Aragon*, 229 S.W.3d at 724. However, courts have held that Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. *E.g.*, *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009); *Aragon*, 229 S.W.3d at 724. Evidence is considered unfairly prejudicial when it has "an undue tendency to suggest that a decision be made on an improper basis." *Pawlak v. State*, 420 S.W.3d 807, 809 (Tex. Crim. App. 2013). When conducting a Rule 403 analysis, we consider the following factors: "(1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to

suggest a decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted." *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006).

Here, during trial, the trial court allowed testimony from A.F., A.F.'s mother and A.F.'s brother, T.F., who each testified Fox had engaged in sexual contact with A.F. over the course of three months. A.F. testified Fox was in the bathroom with her, touching her breasts when her mother walked into the bathroom. According to A.F., she had performed oral sex on Fox prior to her mother's entry. A.F. also testified Fox started touching her two to three months before the bathroom incident. She specifically stated Fox first came into her bedroom, touching only her breasts and vagina, but after approximately a month, he started "fingering" her once or twice a week. A.F. also described two separate incidents in which Fox penetrated her anally with his penis and penetrated her sexual organ with an electronic toothbrush. A.F.'s mother also testified as to each of these acts as they were described to her by A.F. Finally, the jury heard testimony from T.F., who testified he saw Fox put his penis inside A.F.'s mouth on one occasion.

In applying the balancing criteria set out for a Rule 403 analysis, we begin by noting that Fox does not challenge the first factor — the probative force of the proffered item of evidence. *See Gigliobianco*, 210 S.W.3d at 641–42. On the contrary, Fox acknowledges the evidence was probative, and under Article 38.37 of the Texas Code of Criminal Procedure, such evidence may be admitted during trial for any bearing the evidence may have on relevant matters, including character of the defendant and acts performed in conformity with the character of the defendant. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37. Thus, we conclude the evidence of extraneous

offenses concerning other acts of sexual misconduct against A.F. was highly probative, weighing in favor of the admission of the evidence. *See id.*; *Gigliobianco*, 210 S.W.3d at 641–42.

We also conclude the State's need for the evidence was high as it indicates Fox's propensity to commit sexual assault on children — specifically, A.F. In cases involving sexual misconduct against children, "there is typically very little evidence to assist prosecutors with proving their cases," and as a result, Article 38.37 allows for the admission of evidence of extraneous offenses involving other instances of sexual misconduct against children. *See Bradshaw v. State*, 466 S.W.3d 875, 882 (Tex. App.—Texarkana 2015, pet. ref'd). Without such evidence, the State's case becomes a "he said, she said" case; we, therefore, conclude the State's need for the evidence weighs in favor of admissibility. *See Hammer*, 296 S.W.3d at 562 (pointing out Rule 403 should be used sparingly to exclude relevant, otherwise admissible evidence that might bear on credibility of defendant in "he said, she said" cases involving sexual assault); *Bradshaw*, 466 S.W.3d at 882 (pointing out in absence of extraneous offense evidence, cases of sexual assault become "he said, she said").

Fox, however, emphasizes the prejudicial nature of the extraneous offense evidence, contending the volume of the evidence was so excessive that it unfairly prejudiced the jury in favor of conviction. We recognize the extraneous offense evidence to which Fox points has a tendency to suggest a verdict on an improper basis because it involves sexually-related misconduct against a child. *See Pawlak*, 420 S.W.3d at 809. The Texas Court of Criminal Appeals has "held that sexually related bad acts and misconduct involving children are inherently inflammatory." *Id.* In this case, some of the extraneous offense evidence was more egregious than the evidence supporting the charged offenses because the offenses involved penetrating A.F.'s anus with the defendant's penis as well as penetrating A.F.'s sexual organ with an object. The evidence also included an allegation that A.F. performed oral sex on Fox. Thus, when considering the third

factor — the tendency of the evidence to suggest a decision on an improper basis — we conclude this factor weighs in favor of exclusion of the evidence. *See Gigliobianco*, 210 S.W.3d at 641–42.

With regard to the remaining factors, Fox does not dispute any of them. Nowhere in his brief does he contend the extraneous offense evidence had any tendency to confuse or mislead the jury, nor do we believe the evidence had such an effect. *See id*. Fox also does not contend the jury was not properly equipped to evaluate the probative force of the evidence — rather, Fox admits the evidence was probative. *See id.* And lastly, Fox does not challenge the amount of time the State took to present the extraneous offense evidence, nor do we believe the State focused an inordinate amount of time to developing the extraneous offenses. *See id.*

After applying the balancing criteria applicable to a Rule 403 analysis, we hold the trial court did not abuse its discretion in admitting the evidence of extraneous offenses. The charged offense involves a claim that Fox sexually assaulted A.F. by inserting his fingers inside her vagina, and as explained above, the evidence of extraneous offenses was highly probative as it established Fox's sexual misconduct against A.F. escalated from touching A.F.'s breasts and genitals to penetrating her, either vaginally or anally, with his penis and an object. And although the extraneous offense evidence may have had a tendency to convict Fox of the charged offense on an improper basis due to its inherently inflammatory nature, the mere fact that the evidence is prejudicial is insufficient to exclude it under Rule 403. *See Pawlak*, 420 S.W.3d at 809 (pointing out all evidence against defendant is by its nature prejudicial). Only if the evidence is "unfairly" prejudicial can it be excluded under Rule 403. *See id.* Moreover, we do not agree with Fox that the sheer volume of the evidence caused the evidence to become unfairly prejudicial as the extraneous offenses relate to only a handful of episodes of sexual misconduct involving Fox and A.F. that occurred within a three-month time span of the charged offense. *But see Pawlak*, 420 S.W.3d at 809 (holding evidence of extraneous offenses — specifically over nine thousand

pornographic images involving children — was marginally probative of charged offense of sexual assault of a child and unfairly prejudicial by sheer volume); *Mosely v. State*, 983 S.W.2d 249, 263 (Tex. Crim. App. 1998) (recognizing admissible evidence may become unfairly prejudicial by sheer volume, yet holding testimony from four victims regarding charged offense was not unfairly prejudicial). Accordingly, we overrule Fox's second issue.

## CONCLUSION

Based on the foregoing, we overrule Fox's issues and affirm the trial court's judgment.

Marialyn Barnard, Justice

Do Not Publish