**Modify and Affirm and Opinion Filed December 16, 2021**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-20-00423-CR**

**ROBERT FITCH, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 4**
**Dallas County, Texas**
**Trial Court Cause No. F-1775148-K**

## MEMORANDUM OPINION

Before Justices Molberg, Nowell, and Goldstein
Opinion by Justice Nowell

A jury convicted Robert Fitch of murder. After finding an enhancement paragraph true, the jury assessed punishment at 40 years' confinement. In four issues, appellant argues the evidence is insufficient, the jury charge contains numerous errors that caused egregious harm, and the trial court abused its discretion by overruling his hearsay objection. In a single cross-issue, the State requests we modify the judgment. We modify the trial court's judgment and affirm as modified.

FACTUAL BACKGROUND

Miguel Gonzalez was murdered on November 4, 2016. Paramedics found his body lying in an intersection in Dallas County; when authorities arrived, Gonzalez was barely breathing and his body was wrapped in a tarp with rope. Gonzalez died before he reached the hospital. Appellant was one of several people charged in connection with Gonzalez's death.

In November 2016, Rigo Reyna, Melissa Peña, Maime Cabrales, and others lived in a house on Silversprings Drive in Dallas County, close to the intersection where Gonzalez was found. Cabrales described the house as a "trap house" operated by Reyna where people bought, sold, and used drugs, including methamphetamine, Xanax, and heroin. Appellant did not live in the house, but he frequented the house; appellant and Reyna had been friends for a long time and they considered themselves like brothers. Another friend of Reyna, Richard Yzaguirre, also frequented the house.

Gonzalez was dating Daniela Baron when he learned that Baron was having sex with Reyna. Several days before November 4, 2016, Gonzalez, under the influence of drugs, went to the trap house and kicked in the front door. Reyna came out of his bedroom, and Gonzalez confronted him about having sex with Baron. Reyna told Gonzalez to leave the house until he sobered up. Before leaving, Gonzalez shot a single round from his gun through the ceiling of the house, but Reyna "laughed it off." One or two days later, Gonzalez returned to the trap house.

–2–

An unnamed man was in the passenger seat of Gonzalez's truck. Gonzalez got out of the truck, knocked on the front door, and yelled at Reyna to come outside. Reyna exited the house and spoke with Gonzalez. Although the passenger remained in the truck, he pointed an assault-type rifle at Reyna through the windshield. Reyna told Gonzalez: "If you're going to shoot me, just do it." He also told Gonzalez to tell the passenger to lower the gun, and Gonzalez complied. As Gonzalez was high again, Reyna reiterated he only wanted to talk to Gonzalez when Gonzalez was not drugged, and Gonzalez left.

On November 4, numerous people were in and out of the house throughout the day. In the evening, Baron called Gonzalez to the trap house because Reyna wanted to talk to him. After Gonzalez arrived, he went into Reyna's room along with Reyna, Baron, Peña, Yzaguirre, and appellant. Before she entered the room, Baron asked Reyna and appellant: "are we going to do this or what?"

Gonzalez and Reyna talked about the money Gonzalez owed to Reyna; Gonzalez and Reyna also may have argued about Reyna having sex with Baron. At some point during the discussion, Gonzalez reached toward his left hip with his right hand and pulled a .9 millimeter gun from his pants. Baron announced Gonzalez had a gun, and Reyna, Yzaguirre, and appellant tried to gain control over the gun. At some point while they were wrestling for the gun, Baron hit Gonzalez in the head once or twice with a butane bottle that was approximately the size of a hair spray can. While the men wrestled for control of the gun, the gun fired a round that went

into a wall; the shot may have been accidental and it did not hit a person. While Gonzalez had control over the gun, appellant left the room, went to the kitchen, and returned with a knife. Appellant stabbed Gonzalez "a couple of times."

One of the men took the gun from Gonzalez, and the gun was not seen again. Reyna, Yzaguirre, and appellant began punching Gonzalez, although the testimony is unclear whether the punching started before they wrestled the gun away from Gonzalez. Reyna, Yzaguirre, and appellant punched Gonzalez numerous times in his face and upper body. After losing the gun, Gonzalez did not fight back. A lot of blood flowed from Gonzalez's nose and back. Gonzalez eventually lost consciousness.

Once Gonzalez regained some consciousness, the men told him to go into the backyard. Dazed and stumbling, Gonzalez went to the back porch along with Reyna, Baron, and appellant. While Gonzalez was lying on the back porch, Reyna hit him "a couple of times" with an item that Peña thought looked like a two-by-four. Gonzalez's body was then wrapped in a tarp and placed in the back of his truck, which Peña had moved to the back yard. Reyna, driving Gonzalez's truck, and appellant, driving his own car, left the property. About twenty minutes later, Reyna and appellant returned to the house in appellant's car; Gonzalez's truck was not returned to the trap house. After Gonzalez was taken from the house, several people began cleaning large quantities of blood from the floors, walls, and back porch.

Police executed a search warrant on the trap house several months later. They found evidence of blood in the room where Gonzalez was beaten, in the hallway, on the back porch, and in other places in the house. Much of the blood belonged to Gonzalez.

Using photographs of the body, the medical examiner described Gonzalez's injuries, including a fractured skull and stab wound to his back. The stab wound penetrated about five inches into the muscle. The medical examiner testified the stab wound was "a nonlethal injury." He later explained he calls such stab wounds "potentially lethal injuries from the standpoint that if left untreated, you could get muscular vessels that bleed or it can get infected. It's not rapidly lethal. The blunt force injuries are the rapidly lethal injuries." The stab wound did not kill Gonzalez, but the stab wound was "potentially fatal in the absence of blunt force injuries." Blunt force injuries caused Gonzalez's death.

Appellant and Reyna were tried together. The jury convicted appellant and Reyna of murder. Appellant appeals.[1]

LAW & ANALYSIS

A.     Sufficiency of the Evidence

In his first issue, appellant argues the evidence is insufficient to support his conviction. The State responds that appellant's first issue is multifarious and,

---

[1] Reyna's appeal was handled separately. *See Reyna v. State*, No. 06-20-00090-CR, 2021 WL 297585, at *1 (Tex. App.—Texarkana Jan. 29, 2021, pet. ref'd) (mem. op., not designated for publication).

alternatively, the evidence is sufficient. We agree with the State. An issue is multifarious if it raises multiple complaints or grounds for reversal in a single issue. *Killian v. State*, No. 05-19-00227-CR, 2020 WL 2847275, at *10 (Tex. App.— Dallas June 2, 2020, pet. ref'd) (mem. op., not designated for publication) (citing *Busby v. State*, 253 S.W.3d 661, 667 (Tex. Crim. App. 2008); *In re S.K.A.*, 236 S.W.3d 875, 894 (Tex. App.—Texarkana 2007, pet. denied)). By combining independent grounds together in a single issue, an appellant risks rejection of his arguments on the basis that nothing has been presented for review. *Id.* (citing *Wood v. State*, 18 S.W.3d 642, 649 n.6 (Tex. Crim. App. 2000) (refusing to address multifarious grounds)). The Texas Court of Criminal Appeals repeatedly has warned litigants that raising multifarious points of error presents nothing for review. *See Wood* , 18 S.W.3d at 649 n.6.; *see also County v. State*, 812 S.W.2d 303, 308 (Tex. Crim. App. 1989) ("Appellant presents nothing for review in this point of error because his argument is multifarious."); *Mays v. State*, 318 S.W.3d 368, 385 (Tex. Crim. App. 2010); *Sterling v. State*, 800 S.W.2d 513, 521 (Tex. Crim. App. 1990); *Taylor v. State*, No. 05-95-01172-CR, 1997 WL 468425, at *2 (Tex. App.—Dallas Aug. 18, 1997, pet. ref'd) (not designated for publication) ("A point of error is multifarious if it combines more than one contention in a single point. . . . A multifarious point of error presents nothing for our review.") (internal citations omitted)).

Appellant's first issue includes numerous propositions, including: (1) the legal standard for considering accomplice-witness testimony and an argument that there is insufficient evidence corroborating Peña's testimony,[2] (2) two arguments that the credibility of a key witness is a critical issue and the jury should have been provided with additional information about one specific witness's criminal background so the jury could properly assess her credibility, (3) a request that we take judicial notice of records filed with the Dallas County District Clerk, (4) an argument that the jury charge includes erroneous instructions, (5) an argument that Peña could not accurately recall the events that occurred and Peña simply agreed with the prosecutor who examined her in violation of Texas Rule of Evidence 611, and (6) an assertion the evidence is legally insufficient to show the attacks on Gonzalez were not immediately necessary to prevent Gonzalez from harming others. Because appellant bases his first issue on multiple legal theories, his first issue is multifarious. *See Davis v. State*, 329 S.W.3d 798, 803 (Tex. Crim. App. 2010) (citing TEX. R. APP. P. 38.1); *see also Jenkins v. State*, 493 S.W.3d 583, 605 n.50 (Tex. Crim. App. 2016). However, in the interest of justice, we will review the evidence to determine whether it is sufficient to support the conviction.

To evaluate the sufficiency of the evidence, we consider the evidence in the light most favorable to the verdict and determine whether any rational trier of fact

---

[2] Appellant provides the legal standard for considering accomplice witness testimony on page 43 of his brief and argues there is insufficient evidence corroborating Peña's testimony on page 67 of his brief; several of the other listed arguments appear between the two.

could have found the essential elements of the offense beyond a reasonable doubt. *Acosta v. State*, 429 S.W.3d 621, 624–25 (Tex. Crim. App. 2014); *see also Jackson v. Virginia*, 443 U.S. 307 (1979). "This standard tasks the factfinder with resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from basic facts." *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015). Our duty is to ensure that the evidence presented supports the jury's verdict and that the State has presented a legally sufficient case of the offense charged. *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). "[O]ur role is not to become a thirteenth juror," and we "may not re-evaluate the weight and credibility of the record evidence and thereby substitute our judgment for that of the fact-finder." *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), *modified by Guidry v. State*, 9 S.W.3d 133 (Tex. Crim. App. 1999).

Relevant here, a person commits the offense of murder if he intentionally or knowingly causes the death of an individual or if he intends to cause serious bodily injury and commits an act "clearly dangerous to human life" that causes the death of an individual. TEX. PENAL CODE § 19.02(b)(1), (2). A person acts intentionally or with intent with respect to the nature of his conduct or to the result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the conduct to result. *Id.* § 6.03(a). A person acts knowingly or with knowledge with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A

–8–

person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *Id.* § 6.03(b).

The indictment charged appellant with intentionally and knowingly causing the death of Gonzalez by "causing blunt force injuries to the deceased with an unknown object, a deadly weapon, the exact nature and description of which is unknown and unknowable to the grand jury and by causing sharp force injuries to the deceased with an unknown object, a deadly weapon, the exact nature and description of which is unknown and unknowable to the grand jury."[3]

Evidence shows that three men, including appellant, were punching Gonzalez and continued attacking him after he no longer had control over the gun and after he was not fighting back. Appellant briefly left the bedroom to obtain a knife from the kitchen. Appellant then stabbed Gonzalez a couple of times. Gonzalez was bleeding heavily from his back as he stumbled out of the trap house. The medical examiner testified a stab wound on Gonzalez's back was about five inches deep into the muscle. While this injury was not the cause of death, such an injury is a "rapidly lethal injury" that, if left untreated, could be lethal.

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational fact finder could have found, beyond a reasonable doubt, each element

---

[3] The language in the indictment appears in all capital letters.

necessary to support the finding that appellant committed the offense of murder as charged in the indictment. *See Acosta*, 429 S.W.3d at 624–25; TEX. PENAL CODE § 19.02(b)(1), (2). We overrule appellant's first issue.

### B. Jury Charge

Appellant phrases his second issue as follows: "The jury charge did <u>not</u> distinctly set forth the law applicable to the case and expressed an opinion about the weight of the evidence. These errors egregiously injured Fitch's rights . . ." Within his second issue, appellant argues the paragraph in the jury charge related to the testimony of an accomplice witness is inadequate because the jury was not informed that accomplices "often have incentives to lie" and, thus, the jury "should exercise caution when considering the testimony of an accomplice." He also argues the charge failed to explain how one person may assume criminal responsibility for the conduct of another, did not identify the other person, and did not limit or identify the form of assistance that the jury could have considered. Within his second issue, he also asserts the charge is erroneous because the trial court did not use language from Texas Code of Criminal Procedure Article 38.14 ("Charge of the Court"), but instead "the trial court instructed the jury that they [sic] did not even need to find Peña was an accomplice witness." He argues the trial court's specific instruction about Peña as an accomplice was "confusing" and "needed to incorporate the idea that Fitch was being held criminally responsible for the conduct of Reyna."

Like his first issue, appellant's second issue is multifarious because it presents joinder of more than one legal theory and raises more than one specific complaint. *See Killian* 2020 WL 2847275, at *10. Appellant's second issue fails because it presents multifarious joinder of grounds, which this Court disapproves. *See id.*

Appellant also raises an alleged jury charge error in his third issue. However, like his first and second issues, appellant's third issue is multifarious. Appellant's third issue argues the following problems with the trial court's charge: (1) the paragraph titled "Application of Deadly Force in Defense of Person" should have included the words "if any" in the phrase "but you further find [appellant] reasonably believed that the use of deadly force [if any] on his part was immediately necessary . . ." because the sentence as written implies he used deadly force; (2) the paragraph titled "Self-Defense" should not have stated the "use of force against another is not justified in response to verbal provocation alone" because (a) there was no evidence that appellant or anyone else initially provoked Gonzalez to draw his gun and (b) the doctrine of provocation involves a legal term of art; and (3) the trial court should have included a different instruction about appellant's right to use force. He argues these errors (which his third issue does not specifically state he is challenging as errors)[4] caused egregious harm.

---

[4] Appellant's third issue states: "Fitch was egregiously harmed by the jury instructions about the justified use of force."

Because appellant bases his third issue on multiple legal theories, his third issue also is multifarious. *See id.* We decline to consider his arguments.

### C.      Hearsay Objection

In his fourth issue, appellant argues the trial court erred by overruling his objection to hearsay evidence. We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019); *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016). The trial court abuses its discretion when it acts without reference to any guiding rules and principles or acts arbitrarily or unreasonably. *Rhomer*, 569 S.W.3d at 669 (citing *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990)). We will not reverse the trial court's ruling unless it falls outside the zone of reasonable disagreement. *Beham v. State*, 559 S.W.3d 474, 478 (Tex. Crim. App. 2018).

Mamie Cabrales lived in the trap house. She testified that on the afternoon of November 4, 2016, she left the house and walked to a nearby game room. While she was there, another woman who lived in the house, Tiffany, came into the game room; Tiffany acted nervous because she had "just seen something." Cabrales testified: "[Tiffany] said she heard that they hurt that boy. They hurt that boy bad." Appellant objected to Cabrales's testimony as hearsay, and the State maintained it was admissible as a present sense impression. On appeal, appellant argues the trial court erred by admitting the statement and the error impacted his substantial rights because

"the sole possible relevance of this evidence was that someone at the scene told the witness that the defendants hurt Gonzalez earlier that day."

For purposes of this appeal, we will assume without deciding that the admission of the statement was error. "A violation of the evidentiary rules that results in the erroneous admission of evidence is non-constitutional error." *Delgado v. State*, No. 05-19-00821-CR, 2021 WL 4901565, at *18 (Tex. App.—Dallas Oct. 21, 2021, no pet. h.) (citing *Jones v. State*, 111 S.W.3d 600, 604 (Tex. App.—Dallas 2003, pet. ref'd)). We disregard any non-constitutional error that does not affect a defendant's "substantial rights." TEX. R. APP. P. 44.2(b); *see also Delgado*, 2021 WL 4901565, at *18. A substantial right is affected if an error has a substantial and injurious effect or influence in determining the jury's verdict. *Delgado*, 2021 WL 4901565, at *18 (citing *Thomas v. State*, 505 S.W.3d 916, 926 (Tex. Crim. App. 2016)). An error does not affect substantial rights if the appellate court has "a fair assurance from an examination of the record as a whole that the error did not influence the jury, or had but a slight effect." *Macedo v. State*, 629 S.W.3d 237 (Tex. Crim. App. 2021). When deciding that question, we consider: "(1) the character of the alleged error and how it might be considered in connection with other evidence; (2) the nature of the evidence supporting the verdict; (3) the existence and degree of additional evidence supporting the verdict; and (4) whether the State emphasized the error." *Id.*

In this case, the evidence showed appellant acted with two other men to beat Gonzalez until he was unconscious; they beat Gonzalez after Gonzalez no longer had a gun and stopped fighting back. Appellant left the room where the beating was taking place to obtain a knife; he then used that knife to stab Gonzalez, inflicting a significant wound. Once Gonzalez regained some consciousness and was lying on the back porch, Reyna hit him more than once with an item that may have been a two-by-four. The men wrapped his body in a tarp, tied his body with rope, and loaded the body into the back of Gonzalez's truck. Gonzalez's body was found in the middle of a nearby intersection, and he died en route to the hospital. The medical examiner testified Gonzalez died from blunt force injuries. All evidence at trial showed Gonzalez was beaten very badly and beaten by multiple men. Tiffany's statement did not indicate which people hurt "that boy." The State did not emphasize Cabrales's testimony about what Tiffany said to the jury.

Given the evidence of guilt in this record, we conclude any error by the trial court in allowing Cabrales's testimony about what Tiffany said did not influence the jury or had but slight effect. Thus, any error did not affect appellant's substantial rights. We overrule appellant's fourth issue.

### D.    Modification of Judgment

In a single-cross issue, the State requests we modify the judgment to correctly show appellant was charged with only one enhancement paragraph and appellant pleaded not true to the enhancement allegation. We agree the judgment incorrectly

reflects appellant was charged with two enhancement paragraphs and pleaded true to both. We have the power to modify the trial court's judgment when we have the necessary information to do so. *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd). Because the requested modification is proper, we modify the judgment as requested.

CONCLUSION

We modify the trial court's judgment and affirm the judgment as modified.

/Erin A. Nowell//
ERIN A. NOWELL
JUSTICE

200423f.u05
Do Not Publish
TEX. R. APP. P. 47.2(b)

–15–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

ROBERT FITCH, Appellant

No. 05-20-00423-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 4, Dallas County, Texas Trial Court Cause No. F-1775148-K. Opinion delivered by Justice Nowell. Justices Molberg and Goldstein participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

Under the heading "1st Enhancement Paragraph," we **DELETE** the phrase "Pleaded True" and **ADD** the phrase "Pleaded Not True."

Under the heading "2nd Enhancement Paragraph," we **DELETE** the phrase "Pleaded True" and **ADD** the letters "N/A."

Under the heading "Finding on 2nd Enhancement Paragraph," we **DELETE** the phrase "**Found True**" and **ADD** the letters "N/A."

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 16th day of December, 2021.